Rajiv BALI, Plaintiff,

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION and Health Care Service Corporation, Defendants.**

No. 87 C 6931.

United States District Court,
N.D. Illinois, E.D.

April 19, 1988.

George W. Hamman, Marvin N. Benn, Wayne H. Michaels, Dawn M. Cassie, Hamman & Benn, Chicago, Ill., for plaintiff.

Roger L. Taylor, Stephanie A. Scharf, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Rajiv Bali brings this three-count action against the Blue Cross and Blue Shield Association ("Blue Cross") and the Health Care Service Corporation ("HCSC") seeking long-term disability benefits, reinstatement of medical benefits and reimbursement for certain medical expenses. The parties filed cross-motions for summary judgment. For the following reasons, we grant defendants' motion for summary judgment.

### Factual Background [1]

From January 1980 through March 1982, Bali was employed by HCSC as an auditor to visit hospitals and perform on-site inspections and audits. An HCSC auditor is required to carry to the sites certain work-papers and manuals. While an HCSC employee, Bali was covered by a long-term disability plan ("LTD Plan") sponsored by HCSC and administered by Blue Cross through the National Employee Benefits Committee ("NEBC"). A participant in the LTD Plan is "disabled" and entitled to benefits if

> [the] participant is, determined on the basis of medical evidence satisfactory to the committee, wholly prevented, by reasons of mental or physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time the disability occurred.

The participant seeking benefits bears the burden of providing medical evidence sufficient to support his disability claim. The administrator may make reasonable requests of the participant for further evidence, and the participant's failure to comply provides sufficient grounds for the denial of benefits. The LTD Plan's consulting physician reviews the evidence submitted by the participant and makes a recommendation as to eligibility to the Plan administrator.

Bali was also covered by the Health Assurance Plan ("Health Plan"), a health care benefits plan administered by HCSC. Entitlement to long-term disability benefits under the LTD Plan entitles a participant to medical benefits under the Health Plan as well. Both plans are subject to the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

Bali injured his back on July 24, 1981. He received medical benefits under the Health Plan until his termination on April 1, 1982, and then applied for long-term disability benefits. After a number of denials and appeals, the NEBC finally awarded Bali benefits for the period February 1, 1982 to July 31, 1983, and recommended re-evaluation of Bali's condition before further payments were approved. The NEBC through its various committees requested further information from Bali and asked him to undergo various tests.

The NEBC Medical Review Committee denied continued long-term benefits because Bali did not provide the medical evidence and treatment documentation specifically requested. The Committee warned Bali that he would lose on appeal if he remained uncooperative. After providing some of the requested information, Bali expressly refused in a letter to the NEBC to provide anything further. Based on the limited evidence before it, including the conflicting evaluations of various doctors, the NEBC finally denied further benefits and notified Bali of such in a letter dated

1. Unless noted otherwise in the text of this opinion, the facts set forth in this section of the opinion are undisputed for purposes of this motion.

October 9, 1984. Thereafter, Bali filed this action.

In Count I, Bali charges violations of ERISA. Specifically, by demanding from Bali information that was either unnecessary or which it already had in its possession and by arbitrarily denying continued benefits, Blue Cross breached its fiduciary duty as administrator of the LTD Plan. By failing to monitor Blue Cross' handling of Bali's claim, HCSC breached its duties under the LTD and Health Plans. Bali moves for summary judgment, contending that the medical evidence available to the NEBC warranted continued benefits as a matter of law. In their cross-motion for summary judgment, defendants seek affirmance of the NEBC decision, contending that the record supports the NEBC's denial of benefits, and the Plan cannot be responsible for evidence that Bali failed to produce. Defendants also move for summary judgment as to Counts II and III, which set forth state law contract actions charging breaches of the LTD and Health Plan contracts.

### Count I: ERISA

■ The guidelines under which we review an ERISA trustee's denial of plan benefits are clear. A reviewing court will overturn a benefits denial only if the plaintiff proves that the trustee's decision was arbitrary and capricious, unsupported by substantial evidence or founded on an erroneous interpretation of law. *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 525–26 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987). When the trustee failed to consider important evidence or the explanation of the decision is clearly contradicted by the weight of the evidence, the decision is arbitrary and capricious. *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985), quoting *Motor Vehicle Mfrs. Asso. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). When the evidence before the trustee supports two reasonable but conflicting conclusions, we defer to the trustee's judgment and affirm the decision. *Pokratz*, 771 F.2d at 209; *Torrence v. Chicago Tribune Co.*, 535 F.Supp. 743, 746 (N.D.Ill.1981).

■ The simplicity of these guidelines should not obscure the complexity of applying them to factually-laden medical benefits decisions. As in most such cases, we are presented with a substantial volume of medical documents and conflicting physician's evaluations that span a number of years. After a careful review of this record, we conclude that the NEBC was not arbitrary and capricious in denying Bali long-term benefits beyond July 1983 and accordingly grant defendants' motion for summary judgment as to Count I.

Central to our decision is Bali's continued failure and at times express refusal to cooperate with the NEBC and provide the information that the various NEBC appeals committees requested. As early as June 1983, in the letter informing Bali that the NEBC decided to award benefits for the period ending July 1983, the NEBC expressly requested further information:

> The [NEBC] Sub Committee, while granting your appeal for LTD benefits, expressed concern as to the lack of a specific diagnosis. For this reason the Sub Committee agreed to pay you through July of this year. They noted that your physicians stated that your disability was caused by various symptoms expressed by you and recommended that if the pain persists you should undergo a myelogram in order to better determine the cause of your disability....

The NEBC then specified the medical documents and treatment history that it would need for evaluation, including hospital reports, the results of tests performed and reports from Bali's personal physician.[2]

In each subsequent denial of continued benefits, the NEBC restated the lack of sufficient information and noted that Bali's

---

**2.** Bali contends that by this letter, Blue Cross conceded that Bali was totally disabled, and the burden shifted to the defendants to prove that he recovered from the disability. Bali's contention mischaracterizes the June 1983 letter. The NEBC stated explicitly that the available evidence was inconclusive as to a specific diagnosis of total disability and in no way recognized the existence of that disability.

continued failure to provide the requested information would undermine his position in the next appeal. In August 1984, Bali finally presented the radiologist report from a January 1984 myelogram test which stated that "there is evidence of ... disc herniation." The report also noted that Bali had undergone a CAT scan. The NEBC then asked Bali to provide the other information that it had repeatedly requested and to supplement the radiologist report with the actual results of the myelogram and CAT scan and documentation of Bali's treatment for the herniated disc. Bali refused to provide the information, citing the physician-patient privilege and his own belief that the information was unnecessary. In a September 1984 report, Dr. Leigh concluded from his own evaluation of the medical evidence and from a conversation with Dr. Goldflies that Bali could perform desk work, and the NEBC made its final decision to deny benefits.[3]

Under the unambiguous provisions of the LTD Plan, Bali's failure to provide the requested medical information warranted the denial of further benefits:

> Each Participant shall, *as a condition precedent to the receipt of benefits under the [LTD] Program*, furnish to the Employer such true and correct information as the Committee may reasonably request. (Emphasis added).

Non–Contributory National Long Term Disability Program Manual at 9.

> [NEBC] may request medical evidence at anytime, either before or after the second anniversary of disability, if it is appropriate to substantiate the continuation of LTD benefit payments.

Administration Manual for the National LTD Program at DVI–6.

**3.** The NEBC's decision to finally deny benefits was based primarily on Bali's refusal to cooperate. After reciting the numerous instances in which Bali failed to present requested information, the NEBC stated in the final denial letter that the available medical evidence did not support continued benefits.

**4.** As nonmovant, the party with the burden of persuasion at trial also bears the burden on summary jugment of presenting sufficient facts from which a trier of fact could find in its favor. The movant need only "[point] out to the District Court ... that there is an absence of evi-

Bali was justified in ignoring the NEBC's requests only if they were unreasonable. Since Bali would bear the burden at trial of proving that the requests were unreasonable, he also has the burden here of providing some evidence that supports such a contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–54, 91 L.Ed. 2d 265 (1986).[4] Bali has failed to provide to this Court any evidence to that effect. Except for his own letter to the NEBC stating that he believed the requested information was unnecessary, nothing in the record states or suggests that NEBC's requests were unreasonable.[5]

Indeed, some of the very evidence upon which Bali relies in his motion suggests the contrary. Apparently, one of the concerns of the NEBC was whether Bali actually suffered from a herniated disc and if so, whether the chymopapian treatment he underwent for that condition was successful. In January 1984, Dr. Leigh reported that Dr. Rana "essentially says disabled until disc is ruled out. Once it is ruled out or treated he can work so long as others take over the physical jobs of carrying 40 lb (sic) or more. Pat. obviously does not wish to rule out disc." After becoming aware of the January 1984 myelogram, the NEBC requested the results. Bali did not provide the radiologist report until August 1984. From Dr. Rana's apparent comments, it appears that the NEBC was not unreasonable in recognizing the possibility that the interim chymopapian treatment might have healed the herniated disc. There is no evidence in the record suggesting that the NEBC's attempt to assess the success of the treatment by requesting further medical evidence was unreasonable.

dence to support the nonmoving party's case." *Celotex*, 106 S.Ct. at 2554.

**5.** Bali additionally suggests that HCSC's duty to obtain the information from Bali and present it to the NEBC excused his failure to present that information. The record does not support this contention. At most, the provisions of the LTD Plan required HCSC at the participant's initiation of a claim to provide some basic information such as the participant's age and employment history.

As a result of Bali's failure to provide the objective medical evidence requested, we, like the NEBC, are faced primarily with conflicting physicians' reports, some indicating that, while Bali could not perform the physical requirements of his auditing position, he could satisfactorily perform desk work and was therefore not totally disabled under the LTD Plan, and some suggesting otherwise. For example, in a December 1983 letter, Dr. Goldflies, Bali's personal physician, informed the NEBC that Bali's "lifting ability is limited to approximately 5 pounds. He is markedly restricted and requires that he maintain an activity level of mostly bedrest." On the other hand, Dr. Leigh stated in a September 1984 report that "Dr. Goldflies says Bali ... could probably perform auditor's work so long as no lifting or any physical work to back was involved." Based on the evidence before the NEBC, we cannot conclude that their decision was arbitrary and capricious or unsupported by substantial evidence, and we accordingly grant defendants' motion for summary judgment as to Count I.[6]

### Breach of Contract Actions of Counts II and III

Defendants contend, and Bali does not disagree in his response, that ERISA preempts Bali's state law contract actions charging breach of the LTD and Health Plans. 29 U.S.C. § 1144 (1986); *Pilot Life Ins. Co. v. Dedeaux*, — U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Accordingly, defendants' motion for summary judgment as to Counts II and III is granted.

### Conclusion

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted as to all counts. It is so ordered.

---

**6.** Since Bali failed to provide the information clearly requested, remand to the NEBC for consideration of that information is inappropriate. *Cf. Wolfe v. J.C. Penney Co.,* 710 F.2d 388 (7th Cir.1983) (remanding for consideration of medical evidence that claimant failed to provide when the claimant was reasonably unaware that the trustee requested that specific information).