James A. VANDER PAS, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

No. 97–C–204.

United States District Court,
E.D. Wisconsin.

May 19, 1998.

Robert A. Nesemann, Olson Nesemann, Appleton, WI, for plaintiff.

John Harper III, Dunkley, Bennett & Christensen, Minneapolis, MN, for defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff James Vander Pas brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). Pursuant to his rights under 29 U.S.C. § 1132(a)(1)(B), the plaintiff challenges the discontinuation of his long-term disability benefits, under a benefit plan issued by UNUM Life Insurance Company of America ("UNUM" or "Company"), the defendant. In addition to his ERISA claim, the plaintiff pleads two supplemental state law claims also based on the denial of disability benefits allegedly owed to him—a claim for breach of contract and a claim for breach of duty to act in good faith. The court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

Under consideration is UNUM's motion to dismiss plaintiff's supplemental claims based on preemption by ERISA, and for summary judgment on the underlying ERISA claim. The plaintiff has not opposed the motion to dismiss his state law claims. The court, as well, finds that the law is well-established: ERISA "occupies the field" and supplemental state law claims such as the plaintiff's are subsumed. *See, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–92, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *and Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Therefore, I will grant UNUM's motion to dismiss these claims. UNUM's motion for summary judgment on the ERISA claim, however, is another matter.

### I. Factual Background

The following facts are not disputed.

UNUM issued a long-term disability plan, Group Policy No. 369510 ("Policy"), to plaintiff's employer, Insurance Service Center, Inc. The Policy is governed by ERISA and became effective on November 1, 1992. It included the following pertinent provision:

PRE–EXISTING CONDITION EXCLUSION

This policy will not cover any disability:

1. caused by, contributed to by, or resulting from a pre-existing condition; and

2. which begins in the first 12 months after an insured's effective date.

A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.

(Def.'s Ex. A at 31.)

In late summer of 1993, the plaintiff began to complain of headaches and, on August 12, 1993, was diagnosed as having a subdural hematoma by his physician, John R. Keegan, M.D. A subdural hematoma is a localized mass of exuded blood under the brain covering. The plaintiff claims that the subdural hematoma has produced lasting physical effects which have rendered him totally disabled.

On November 17, 1993, UNUM began paying monthly long-term disability benefits to the plaintiff, as a result of his disability claim and pursuant to the Policy. For over two years, UNUM continued to disburse monthly disability benefits to the plaintiff.

As part of UNUM's routine ongoing evaluation of long-term disability claims, a consulting physician reviewed plaintiff's medical records in early 1996. The physician concluded that the plaintiff's use of the drug Coumadin in the months prior to the effective date of the policy had "certainly contributed to, if not actually caused, his subdural hematoma." (Def.'s Ex. B at 77.)

Dr. Keegan had prescribed Coumadin to the plaintiff because of his history of atrial fibrillation—a rapid, irregular heartbeat—which puts one at risk for blood clots that can be carried to the brain, causing a stroke. Coumadin is an anti-coagulant which retards the formation of blood clots, reducing this risk. But because it reduces blood clotting, Coumadin may also predispose an individual to experience a subdural hematoma. At the time of his hematoma, the plaintiff was taken off Coumadin; Dr. Keegan also noted his impression that the hematoma was "secondary to anticoagulation." (Def.'s Ex. B at 355.)

On March 12, 1996, UNUM advised the plaintiff that he would no longer receive long-term disability benefits because his use of the drug Coumadin in the months preceding the effective date satisfied the pre-existing condition exception of the Policy. According to UNUM, the benefits never should have been extended to the plaintiff in the first place, although the Company did not demand reimbursement of already-disbursed benefits. (Def.'s Ex. B at 62.)

The plaintiff responded by letter on March 23, 1996, asking that UNUM reconsider its decision to discontinue his benefits. The plaintiff's letter also made the following point: "Dr. Keegan put me on Coumadin because I had a condition called atrial fibrillation; there was nothing wrong with my brain. My disability was not caused by my

heart condition, but by a subdural hematoma the cause of which is not known." (Def.'s Ex. B at 60.)

UNUM completed its review of plaintiff's file on July 29, 1996, affirming its decision to terminate long-term benefits. The July 29 letter—which includes UNUM's stated explanation of why the denial of benefits did "abide by the policy provisions"—will be the subject of further discussion below. (Def.'s Ex. B at 48.)

The plaintiff commenced this action in Wisconsin circuit court, and UNUM subsequently removed to this forum, asserting federal jurisdiction over plaintiff's ERISA claim.

## II. Standard of Review

### A.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that the standard of review for benefits claims under ERISA should "[follow] the pattern of trust law: presumptively *de novo*, but deferential when the instrument insulates the trustee's decisions from searching review."[1] *Sisters of the Third Order of St. Francis v. Swedish-American Group Health Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir.1990). *Firestone* observed that

> [t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers.... A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.

*Firestone*, 489 U.S. at 111, 109 S.Ct. 948.

Based on *Firestone*, this court reviews a denial of benefits allegedly owed under an ERISA plan, under a *de novo* standard unless the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. If the benefit plan confers such discretion on the plan administrator, then this court applies deferential review, assessing the denial

1. *But see* John H. Langbein, *The Supreme Court Flunks Trusts*, 1990 Sup.Ct.Rev. 207, pointing out that this presumption is actually reversed in classic trust law—the trustee is presumed to have discretion unless the instrument specifies otherwise. *Id.* at 219.

of benefits under an arbitrary and capricious, or abuse of discretion, standard. *Id.*

■ Accordingly, the court now looks to the language of the plan at issue to determine if it confers discretionary authority, and if so, the scope of that authority. As it happens, the Policy does not contain an express grant of discretion to the plan administrator. However, Section IV of the Policy, concerning disability benefits, states:

When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

1. disability; and

2. regular attendance of a physician.

The proof must be given upon request and at the insured's expense.

(Def.'s Ex. A at 27.) Section VI of the Policy, containing general provisions, sets forth procedures for submitting notice and proof of claims and lists the elements which the proof must establish—namely, the date, cause, and seriousness of the alleged disability. (Def.'s Ex. A at 36.)

UNUM claims that the above language, by implication, is sufficient to confer discretion on the plan administrator to weigh the proof submitted by plan beneficiaries and to make the necessary determinations about eligibility for benefits. The Seventh Circuit has indeed held that discretion may be conferred by a benefit plan even in the absence of express language to that effect. *See Sisters,* 901 F.2d at 1371 (7th Cir.1990) (holding that magic words such as "the committee has discretion to ..." are not required to grant discretion). Further, the Seventh Circuit has held that plan language similar to the relevant provisions of the Policy grants discretionary authority to plan administrators. *See Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 505 (7th Cir.1995) (finding plan conferred discretion by providing that "benefits will be payable only upon receipt by the Insurance Carrier or Company of such notice and such due proof, as shall be from time to time required, of such disability"); *and Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 379 (7th Cir.1994) (finding that plan conferred discretion by providing that benefits were contingent "upon receipt of proof" and that "[a]ll proof must be satisfactory to us" and "must describe the event, the nature and the extent of the cause for which a claim is made").

The plaintiff objects that if administrator discretion is granted by the terms of the Policy under the above analysis, it extends only to the assessment of proof of disability for eligibility purposes, but not to the interpretation of the pre-existing condition exclusion, found in another section of the Policy. The Seventh Circuit, however, has found "no meaningful distinction between factual determinations and legal interpretations of plan administrators" in the context of discretionary authority. *Ramsey v. Hercules, Inc.,* 77 F.3d 199, 204 (7th Cir.1996). The key inquiry remains simply "whether the administrator has discretion under the plan." *Id.* The plaintiff also contends that whether or not a pre-existing condition exists is an objective determination, not subject to the discretion of the administrator. I am unpersuaded by this argument. Determining the scope of the pre-existing condition exception is a question of "legal interpretation" on which eligibility for benefits turns, and is thus part and parcel of whatever discretionary authority the Policy confers.

Because of the direct precedent of *Patterson* and *Donato* cited above, I am compelled to find that in this circuit[2] a requirement of

---

2. Not all the Courts of Appeals have directly addressed this issue, and district courts from other circuits frequently cite *Donato* and *Bali.* See note 3 *infra.* *But see Kearney v. Standard Ins. Co.,* 144 F.3d 597 (9th Cir.1998) (holding that language stating that benefits will be paid "upon receipt of satisfactory written proof" of disability is "imprecise and ambiguous" and does not con-

fer discretion without additional express language); *Perez v. Aetna Life Ins. Co.,* 96 F.3d 813, 826 (6th Cir.1996) ("[S]imply because Aetna has the ability to require written proof before continuing disability benefits does not mean that Aetna has the discretionary authority to decide whether that proof is sufficient within the meaning of the Plan."), *vacated for reh'g en banc,* 106

mere receipt of "proof" of disability prior to entitlement to benefits is sufficient, by itself, to grant discretion to the plan administrator to "determine eligibility for benefits or to construe the terms of the plan" under *Firestone*. Thus, I must review the denial of benefits alleged by the plaintiff in this action under the highly deferential arbitrary and capricious standard.

However, I would note that the conclusion reached in this circuit that a proof requirement alone constitutes a sweeping grant of discretion to plan administrators appears contrary to the spirit and intention of the *Firestone* decision. In *Firestone*, the Supreme Court intended to settle the conflict among the circuits over the proper standard of review to apply to decisions regarding claims for benefits brought under § 1132(a)(1)(B) of ERISA by establishing a presumptively *de novo* standard for such claims. *Firestone*, 489 U.S. at 108, 109 S.Ct. 948. In fact, the case produced a new uncertainty, and the conflict survived with the inquiry shifting to what kind of written terms are sufficient to confer administrator discretion, thereby triggering deferential review. *See, e.g.,* Jonathan P. Heyl, *Bedrick v. Travelers Ins. Co.: The Fourth Circuit's Continued Attempt to Work with the "Doctrinal Hash" of the Standard of Review in ERISA Benefit–Denial Cases,* 75 N.C.L.Rev. 2382, 2406–08 (1997).

In the Seventh Circuit, incrementally and perhaps without conscious design, we appear to have arrived at such a minimalist conception of what is necessary to confer discretion [3] that almost no claim for benefits un-

---

F.3d 146 (6th Cir.1997) (reconsideration still pending); *and Bounds v. Bell Atl. Enter. Flexible Long–Term Disability Plan,* 32 F.3d 337, 339 (8th Cir.1994) ("... we conclude that the deferential standard under [*Firestone*] is not triggered by an insurance policy's proof-of-loss provision unless it expresses an intent to confer discretion.").

**3.** The Seventh Circuit's first attempt to address the question left hanging by the Supreme Court in *Firestone* came in *Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043 (7th Cir.1989). *Bali* involved the plaintiff's persistent failure to provide requested medical documentation of his disabling condition to the National Employee Benefits Committee ("NEBC"), the entity administering his long-term disability plan. Ultimately, the NEBC denied the Bali's long-term benefits based on the available medical evidence, but emphasized the lack of confirming evidence as a significant factor. *Id.* at 1046. Reviewing the denial of benefits under the pre-*Firestone* rule in the Seventh Circuit—a highly deferential standard of review—the district court concluded that the plan administrator's decision was not arbitrary and capricious. *Bali v. Blue Cross & Blue Shield Ass'n,* 683 F.Supp. 1220, 1222 (N.D.Ill.1988). "Central to our decision is Bali's continued failure and at times express refusal to cooperate with the NEBC and provide the information that the various NEBC appeals committees requested." *Id.*

After the district court's ruling, the Supreme Court decided *Firestone*. On appeal to the Seventh Circuit, the proper standard of review in *Bali* was reconsidered in light of *Firestone*. Acknowledging that the critical question now was whether or not the plan conferred discretion, the Seventh Circuit examined the following language in Bali's benefit plan:

"Disabled" means that a Participant is, *determined on the basis of medical evidence satisfac-*

*tory to the Committee,* wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time his disability occurred,

*Bali,* 873 at 1047. (emphasis added); and

as a condition precedent to the receipt of benefits under the program, [each Participant must] furnish to the Employer *such true and correct information as the Committee may reasonably request,*

*Id.* at 1047 n. 6 (emphasis added). Based on this language, the Seventh Circuit concluded that the plan "clearly gives the administrator discretion *as to the amount and kind of information required to prove disability,* as long as the administrator's requests are 'reasonable'." *Id.* at 1047 (emphasis added). However, the court also specifically held that the plan "does not give the NEBC complete discretion *with respect to the ultimate determination of disability.*" *Id.* (emphasis added). The court apparently found no discretion with respect to eligibility for benefits despite additional plan language providing that "[a] Participant shall be entitled to benefits under this Program if he is found, on the basis of medical evidence satisfactory to the Committee, to be Disabled ..." *Id.* at 1049 n. 8.

In spite of this latter determination, which supports *de novo* review for disability determinations and most benefits entitlement questions under *Firestone*, the Seventh Circuit used an arbitrary and capricious standard of review in *Bali*. But the reason for this was emphasized repeatedly by the court: the narrow question presented on appeal was whether NEBC had discretion to make reasonable requests for medical documentation such that plaintiff's benefits could be denied for failure to comply, without this denial being either arbitrary or capricious. *Id.* at 1043, 1048. The question was not whether the avail-

der an ERISA plan will be reviewed *de novo* by our district courts. Virtually all such plans necessarily link a claimant's eligibility for benefits to the submission of some form of proof—of illness, disability, accident, etc. In the end, the effect of the *Patterson* and *Donato* holdings comes close to the *"wholesale* importation of the arbitrary and capricious standard into ERISA," which the Supreme Court found "unwarranted." *Firestone* at 109, 109 S.Ct. 948.

### B.

As this matter comes before me on defendant's motion for summary judgment on the remaining ERISA claim, I am also guided by summary judgment methodology. As is well known, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In weighing a summary judgment motion, courts construe evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

In the context of this summary judgment motion, the ultimate question this court is called upon to resolve is whether a reasonable factfinder could conclude, based on the evidence before me, that the plan administrator's decision to deny the plaintiff long-term

disability benefits was, in fact, arbitrary and capricious. The decision may be deemed arbitrary and capricious if the plan administrator

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Thus, I may not substitute my judgment for the plan administrator's; I must determine whether, in light of the relevant facts and policy language, the plan administrator "articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.; see also Smart v. State Farm Ins. Co.*, 868 F.2d 929, 936 (7th Cir.1989). In the absence of such a "satisfactory explanation," a genuine issue of material fact exists as to whether the denial of benefits was arbitrary and capricious, requiring me to deny defendant's motion for summary judgment.

### III. Analysis

The core of the dispute in this case is whether the pre-existing condition provision of the Policy was triggered by the plaintiff's use of the drug Coumadin in the three months prior to November 1, 1992, the date on which the Policy became effective. The provision excludes coverage for disability "caused by, contributed to by, or resulting from" a pre-existing condition, defined as follows: "a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or

---

able medical evidence supported a decision to deny benefits, under any standard of review. This is a far more problematic proposition, for on the conflicting subjective evidence the NEBC had before it, it would be very hard to conclude—especially on a summary judgment motion—that the decision should survive even review under the "arbitrary and capricious" standard, *let alone the de novo review now indicated under Firestone Tire.*
*Id.* at 1048 (emphasis added).

The point of this exegesis? *Bali*, in fact, suggests that plan language indicating that eligibility for benefits depends on submitted proof that the insured is "disabled" *does not* by itself trigger broad deferential review over entitlement claims under the plan. Both *Patterson*, 70 F.3d at 505, and *Donato*, 19 F.3d at 379–80, and numerous district court decisions continue to cite *Bali* for precisely the opposite holding—that proof requirements confer complete discretion over the ultimate determination of benefits entitlement.

medicines in the three months prior to the insured's effective date." (Def.'s Ex. A at 31.)

The plaintiff requested a review of his claim for long-term benefits on March 23, 1996, specifically asking UNUM to explain why and on the basis of what evidence his use of Coumadin was being considered a "sickness or injury" within the meaning of the pre-existing condition definition. UNUM's response on July 29, 1996, offered the following explanation:

> Hospital records indicate a diagnosis on 8/12/93 of Subdural hematoma, presumably secondary to anticoagulation. The notes also indicate a previous history of chronic aatrial [sic] fibrillation refractory to attempts at cardioversion and maintenance on long term Coumadin within intensive anticoagulation increase following an embolic CVA while on coumadin [sic].

> The results of that review finds that the condition for which you are claiming disability benefits was caused by, contributed to by and resulting from the prescribed anticoagulant medication that you took during the preexisting period and we are unable to reverse the prior decision to deny benefits under the preexisting exclusion provision of the contract.

(Def.s Ex. B at 47–48.) The defendant points to no other articulated explanation from the plan administrator of UNUM's interpretation of the terms of the pre-existing condition provision. The court must therefore determine if this proffered explanation is "satisfactory" and makes a "rational connection between the facts found and the choice made." *Motor Vehicle*, 463 U.S. at 43, 103 S.Ct. 2856. The focus of my inquiry is the reasonableness of UNUM's interpretation of the policy language, as set forth in the July 29, 1996, claim review. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir.1990) (reviewing under deferential standard administrator's interpretation of policy language, found in insurance company's internal memoranda).

In *Lister v. Stark*, 942 F.2d 1183 (7th Cir.1991), the Seventh Circuit faced a similar question of interpretive reasonableness in a case involving an alleged denial of pension benefits. The key issue of legal interpretation in that case was whether the definition of "compensation" for the purpose of calculating retirement benefits encompassed commissions earned by sales managers, who also received base salaries. *Lister*, 942 F.2d at 1184–85. The plaintiff Lister objected to the calculation of his pension benefits based only on his base salary, discounting the monthly sales percentage and annual profits percentage "commissions" he received as additional compensation. The objection was treated as an initial claim for benefits by the committee administering the plan. *Id.* at 1185. The plan administrator wrote back to Lister, informing him that his benefits claim was denied:

> This letter quoted the Plan's definition of "compensation" and indicated that the calculation of Mr. Lister's pension was consistent with that definition. The letter included nothing, beyond this bare assertion, to support the conclusion that a regional sales manager's monthly sales percentage and annual profits percentage did not fit the Plan's definition of "compensation."

*Id.*

Reviewing the plaintiffs' benefits claim in *Lister* under a deferential standard, the district court concluded that the committee's interpretation of "compensation" was reasonable, but apparently supplied its own legal analysis of the term to fill the void in the plan administrator's stated explanation, described above. *See id.* at 1186. The Seventh Circuit, also applying an arbitrary and capricious standard of review, reversed on appeal. The appellate court found "a genuine issue as to whether the Committee adequately considered the issue of interpretation presented to it." *Id.* at 1189. In reaching this conclusion, the Seventh Circuit focused solely on the explanation put forward by the plan administrator, viewing the letter as a reflection of the decision-making process and analysis undertaken by the committee. Finding that the term "compensation" was ambiguous in the plan, the court stated that

> [i]t would be expected, therefore, that the Committee would evaluate the available extrinsic evidence to determine the meaning of the disputed term when the docu-

ment is read in its entirety. On the record, there is, in our view, a genuine issue as to whether the committee performed such a function.... Nor does the record otherwise reveal that such an analysis took place.

*Id.* at 1189. Thus, the Seventh Circuit denied the summary judgment motion in *Lister* not because it expressly found that the ultimate decision to deny benefits was unreasonable, but because the committee's stated explanation was too thin to dispel any conclusion that the denial was arbitrary and capricious. *See id.* at 1189 ("Accordingly, further proceedings in the district court are required. We stress, however, that the Committee's decision must be sustained unless it is unreasonable.").

■ In the case before me today, I find the explanation put forward by UNUM in its capacity as plan administrator to be similarly thin and devoid of a "rational connection between the facts found and the choice made." *Motor Vehicle,* 463 U.S. at 43, 103 S.Ct. 2856. Quite simply, UNUM has not articulated a satisfactory explanation as to why a prescription drug such as Coumadin qualifies as a "pre-existing condition" within the meaning of the Policy. The Policy defines a pre-existing condition as a "sickness or injury" for which the insured received medical attention or took prescription drugs during the relevant time period. Elsewhere, the Policy defines "sickness" as "illness or disease." (Def.'s Ex. A at 24.) "Injury" is defined as "bodily injury resulting directly from an accident and independently of all other causes." (Def's Ex. A at 23.) Although the pre-existing condition definition contains a reference to "prescribed drugs," the definition does not refer to prescription drugs as another type of prior "condition" but as part of a phrase modifying "sickness or injury." Coumadin, by itself, is neither a sickness nor an injury. Thus, a plain reading of the definition does not, without additional explanation, support the interpretation which UNUM appears to take for granted.

In its July 29, 1996, explanation, UNUM recounts some of the plaintiff's medical history, but depicts only Coumadin as the trigger for the pre-existing condition exclusion. In fact, the chain of causation appears more attenuated: the plaintiff's atrial fibrillation caused him to take Coumadin, which brought about his subdural hematoma, which produced his disability. In spite of this, UNUM's claim review offers no reasoning, no proximate cause analysis, no extrinsic evidence, no construction of ambiguous policy language, and no discussion of the facts of this case in light of this ambiguity to explain how it arrived at the conclusion that Coumadin was a "pre-existing condition" under the Policy.

The Court acknowledges that ERISA plan administrators are not often lawyers and may not always justify their decisions to deny benefits with the careful reasoning or analysis used by judges. But often, as here, these decisions are fundamentally legal in nature, wherein "the validity of the claim [turns] on a question of law or of contract interpretation." *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1050 (7th Cir.1987) (citing *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 144 (3rd Cir.1987), *rev'd on other grounds,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Yet such decisions may have enormously important consequences for people who are injured, sick or disabled. Particularly in view of the tremendous transfer of discretion inherent in deferential review, it is not unreasonable to require that a less-than-obvious *ratio decidendi* be clearly spelled out by the plan administrator. As others have noted, "[c]ourts have no reason to defer to private parties to obtain answers to these kinds of questions." *Id.*

In sum, the proposition that Coumadin played a part in causing plaintiff's subdural hematoma—the most that is asserted by the July 29, 1996, claim review—is not equivalent to a studied conclusion that plaintiff's use of Coumadin satisfies the definition for "pre-existing condition," or that his disability was "caused by, contributed to by, or result[ed] from" the use of Coumadin. I therefore conclude, as the Seventh Circuit did in *Lister,* that "[t]here remains a genuine issue as to whether [UNUM] adequately considered the issue of interpretation presented to it." *Lister,* 942 F.2d at 1189. Accordingly, I

cannot find that UNUM's denial of disability benefits to the plaintiff was *not* arbitrary and capricious, under a summary judgment analysis.

Based on the foregoing analysis, defendant's motion for summary judgment is **HEREBY DENIED.**

**BUT IT IS ORDERED** that defendant's motion to dismiss plaintiff's supplemental state law claims is **GRANTED.**