Kevin SUMMERS and Amy Summers,
Plaintiffs-Appellants,

v.

TOUCHPOINT HEALTH PLAN, INC.,
Defendant-Respondent.†

Court of Appeals

*No. 2005AP2643. Oral argument August 22, 2006.
—Decided September 12, 2006.*

2006 WI App 217

(Also reported in 723 N.W.2d 784.)

† Petition to review granted 2/12/07.

On behalf of the plaintiffs-appellants, the cause was submitted on the joint briefs of *Stephen E. Meili* of *Consumer Law Litigation Clinic, University of Wisconsin Law School*, and *James W. Gardner* of *Lawton & Cates, S.C.* of Madison, and oral argument by *Stephen E. Meili*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert J. Dreps* and *Barbara J. Zabawa* of *La Folette Godfrey & Kahn* of Madison and oral argument by *Robert J. Dreps*

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Kevin and Amy Summers appeal a summary judgment concluding that Touchpoint Health Plan, Inc., properly denied healthcare benefits to the Summers' son Parker. The Summers assert the trial court's decision should be reversed for the following four reasons: (1) the trial court should have applied a de novo standard of review instead of the arbitrary and capricious standard; (2) even applying the arbitrary and capricious standard, Touchpoint acted arbitrarily and capriciously in denying Parker benefits; (3) Touchpoint's second denial letter was arbitrary and capricious; and (4) the insurance plan was illusory. Because we agree the second letter was arbitrary and capricious, the judgment is reversed in part and remanded for further proceedings.

570

## BACKGROUND

¶ 2. In October of 2002, doctors diagnosed Parker Summers, at the age of three, with a large cancerous brain tumor known as anaplastic ependymoma, a rare form of childhood cancer. At the time of the diagnosis, Parker's father, Kevin, had family health insurance through an Employee Retirement Income Security Act (ERISA) plan with his employer. Touchpoint Health Plan, Inc., a Health Maintenance Organization, administered the plan. Touchpoint approved a referral for Parker to the UW Hospital in Madison to have the tumor removed. At the UW Hospital, Dr. Bermans Iskandar removed Parker's tumor.

¶ 3. After removal of the tumor, Iskandar referred Parker to Dr. Diane Puccetti, a pediatric oncologist, for follow-up treatment. Puccetti considered three different treatment options: observation, chemotherapy with radiation, and high-dose chemotherapy with stem cell rescue. Puccetti recommended the third option – high-dose chemotherapy with stem cell rescue – as the best course of treatment. Parker's parents decided to follow Puccetti's recommendation and submitted a request to Touchpoint for coverage approval. Touchpoint denied coverage under the plan's experimental/investigational exclusion because the treatment was the subject of a Phase II clinical trial.[1] After the treatment was denied, Parker saw Dr. Kelly Maloney at Children's Hospital of Wisconsin, who recommended chemotherapy plus observation to treat Parker. Parker's parents elected not to pursue this treatment because of the potential health risks to Parker's development.

---

[1] A clinical trial is a research study that uses new methods of screening, prevention, diagnosis, and treatment of disease in a medical study.

¶ 4. On November 20, 2002, the Summers requested an expedited independent review of the denial of benefits. On November 25, 2002, the independent review organization upheld the denial of benefits. The review organization agreed the treatment may have been the best option for Parker, but was expressly excluded as experimental.

¶ 5. Following the independent review organization's decision, Puccetti suggested Parker be taken out of the study and given the same treatment. Puccetti submitted another request for coverage of the treatment to Touchpoint, but this time stating it was not part of any clinical trial study. On December 12, 2002, in another letter, Touchpoint denied coverage for the treatment. Following the second denial, the Summers brought suit to force Touchpoint to pay for the treatment.

¶ 6. On dual motions for summary judgment, the trial court granted Touchpoint's motion. Holding the plan is an ERISA plan, and under ERISA, Touchpoint appropriately denied benefits.

## STANDARD OF REVIEW

¶ 7. The grant or denial of a motion for summary judgment is a matter of law that this court reviews de novo. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 536, 563 N.W.2d 472 (1997). As such, we review a summary judgment without deference to the trial court, but benefiting from its analyses. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate if the "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).[2]

## DISCUSSION

### *Applicable Standard of Review*

¶ 8. The first issue is whether we review the denial of benefits de novo or under a discretionary standard. In cases involving the denial of benefits under ERISA plans, courts apply one of two standards of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The default standard of review for the denial of benefits is de novo. *Id.* Under the de novo standard, no deference is given to the plan administrator or fiduciary's denial of benefits. *Id.* at 113–15. However, if the plan reserves discretion to the plan administrator or fiduciary, the denial of benefits is reviewed under a discretionary standard. *Id.* at 115. Under the discretionary standard, the denial of benefits will not be reversed unless it was arbitrary and capricious. *Id.* at 113–15. Courts look at the policy language to determine which standard of review applies to the denial of benefits. *Id.*; *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331–32 (7th Cir. 2000). A review of Touchpoint's policy language supports the application of the discretionary standard of review.

¶ 9. In cases where courts have applied a discretionary review, the administrator's discretion to deny benefits and interpret policy language is sufficiently

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

clear from the plan language. In *Vander Pas v. Unum Life Ins. Co.*, 7 F. Supp. 2d 1011, 1014 (E.D. Wis. 1998), the court held discretionary review was appropriate where the plan's language required the beneficiary to provide proof to the plan administrator that the treatment was necessary. The court noted discretion was implicit in the requirement of demonstrating the medical necessity of a treatment through proof. *Id.* at 1013–15 (noting no "magic words" are required to have the requisite grant of discretion); *see also Sisters of the Third Order of St. Francis v. Swedish Am. Group Health Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir. 1990) (holding "magic words" are not necessary for a grant of discretion). Thus, there are no certain set words that must be used to convey discretion, but any discretion must be sufficiently clear from the plan language.

¶ 10. The Summers point to several cases to support their argument that the plan does not provide sufficient discretion to the administrator. For example, in *Day v. Wall*, 112 F. Supp. 2d 833, 838–39 (E.D. Wis. 2000), the court held the language "administer, interpret, and apply" was not an unambiguous grant to the plan administrator to transfer funds to a former spouse without a qualified domestic relations order because the transfer violated ERISA and the policy language. *See also Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) (holding the language "authority to control and manage the operation and administration of the Plan" was "merely a grant of administrative powers" that does not trigger deferential review of a plan's actions); and *Baxter v. Lynn*, 886 F.2d 182, 187 (8th Cir. 1989) (holding the de novo standard of review applies because the plan administrator did not have the discretion to interpret ambiguous policy language that was at

574

issue). However, these cases involve actions by the administrator that violate ERISA or plan language that does not provide sufficient discretion.

¶ 11. Here, the plan's language contains a sufficient grant of discretion to the plan administrators. Specifically, the plan language reads as follows:

> Policy Interpretation
>
> Touchpoint Health Plan has the power and authority to administer, interpret and apply this Policy. Touchpoint Health Plan will decide all questions arising in connection with the Policy, and may issue any necessary rule and regulations for the purpose of administering the Policy. Any action or decision issued by Touchpoint Health Plan will be conclusive and binding on all persons except as otherwise provided in this Policy (see, for example, the *Claims Provisions* and *Complaint* and *Grievance* sections). Touchpoint Health Plan's decision will not be overturned unless an appropriate court determines that Touchpoint Health Plan acted in an arbitrary and capricious manner in reaching its conclusion.

Furthermore, the language in question also grants the medical director discretion to deny coverage when treatments are experimental or investigational. In defining experimental/investigational, the plan reads as follows:

> [A]ny service, supply, drug, device, treatment, or procedure that Touchpoint Health Plan's Medical Director determines:
>
> . . . .
>
> Is the subject of an on-going Phase I or II clinical trial, or furnished in connection with medical or other re-

search to determine its maximum tolerated dose, its toxicity, its safety, or its efficacy;

¶ 12. The plan gives Touchpoint's medical director the authority to interpret the plan's language and coverage. Because the plan expressly confers discretion on the medical director to deny benefits to beneficiaries based on a treatment's status in medical research, the issue then becomes whether its denial was arbitrary and capricious. *See Firestone*, 489 U.S. at 113–15.

*Touchpoint's second denial letter was arbitrary and capricious, and therefore, violates ERISA*

¶ 13. For a denial letter to satisfy ERISA requirements and not be arbitrary and capricious, it must provide adequate reasoning to explain its decision so that the beneficiary has a "clear and precise understanding" of the decision. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003). Touchpoint contends that its second letter provides a sufficient explanation of why it denied Parker coverage for his on-going treatment. We disagree.

¶ 14. In cases where courts have found written denials arbitrary and capricious, the denial contains no discussion of the rationale behind the plan's benefit denial, in light of the beneficiaries' expectations. For example, in *Vander Pas*, the court held the denial of benefits based on a pre-existing condition was arbitrary and capricious because the letter offered no reasoning, no proximate cause analysis, no extrinsic evidence, no construction of ambiguity, policy language, and no discussion of the facts in light of the ambiguity. *Vander Pas*, 7 F.Supp. 2d at 1018. Similarly, in *Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1141 (7th Cir. 1997), the

seventh circuit noted a denial must include specific reasons for the denial, a specific reference to the plan provisions on which the denial is based, a description of any additional material or information needed to perfect the claim and information about the steps to take if the participant wishes to appeal the denial. A denial letter lacking these minimal requirements is arbitrary and capricious.

¶ 15. Touchpoint sent two letters to the Summers denying coverage for the high-dose chemotherapy with stem cell rescue. The first letter denied coverage to Parker because the treatment was subject to a Phase II clinical trial study. The letter included the specific policy language Touchpoint based its denial on and provided a detailed procedure the Summers could follow to challenge the denial.

¶ 16. The second letter stated, in relevant part,

> Touchpoint Health Plan received a request on Parker's behalf from Dr. Diane Puccetti to consider coverage for cycle two of the Phase II clinical trial for treatment of anaplastic ependymoma. The request was reviewed and it was determined this is an exclusion of coverage as stated in your Certificate of Coverage.

Unlike the first letter, the second letter does not specifically state why coverage was denied and contains a summary of the procedures to challenge the denial.

¶ 17. We agree with Touchpoint that we review the second letter in conjunction with the first letter denying the benefits. Reviewing the two denial letters, the second letter contains less information than the first letter. When the Summers submitted an application for coverage a second time, they did so under the assumption that the reason they were denied coverage

the first time was because Parker was enrolled in a Phase II clinical trial. However, the second letter does not even acknowledge the Summers' or Puccetti's reasoning that because Parker was no longer enrolled in the clinical trial study he would be covered as part of the continuing treatment. Instead, Touchpoint simply repeated the denial for the reasons stated in the first letter. Touchpoint should have addressed the Summers' policy interpretation, regardless of the detail of the first letter. In short, the second letter does not provide the Summers with a clear and precise understanding why their coverage was denied a second time in light of their reasonable assumption about coverage for the treatment. Consequently, this denial was arbitrary and capricious.

*What is the appropriate remedy for an arbitrary and capricious denial of benefits?*

¶ 18. Having concluded the second denial of Parker's benefits was arbitrary and capricious, we must determine the appropriate remedy. When a beneficiary has been arbitrarily and capriciously denied coverage, there are two remedies. *Hackett*, 315 F.3d at 774–75. If the beneficiary has not yet received the treatments, the remedy is that the beneficiary is provided with an application process that is not arbitrary and capricious, but not necessarily coverage. *Id.* at 776. If the beneficiary has received treatments and is then denied coverage for those treatments, the remedy is that the beneficiary receives retroactive coverage. *Id.* However, coverage could be denied going forward after a non-arbitrary and capricious process by the plan. *Id.* For example, in *Hackett*, the court held a beneficiary was entitled to a retroactive reinstatement of coverage

because an insurance company cut off his coverage based on the recommendation of a new doctor while he was receiving treatment for his mental disorders.

¶ 19. Here, the Summers submitted an application for treatment that is part of a treatment protocol for anaplastic ependymoma. The treatment begins with the removal of the tumor and continues with some follow-up treatment, whether it is observation or some sort of chemotherapy. The nature of Parker's chemotherapy with stem cell rescue is a continuation of his treatment for cancer and was a necessary step toward recovery. Because Touchpoint arbitrarily and capriciously denied coverage for Parker's on-going treatment in the second letter, the appropriate remedy is to remand to the circuit court with instruction to order retroactive reinstatement of benefits and resolve any other collateral issues.

¶ 20. Because our holding regarding the second denial is dispositive, we do not need to resolve the other issues raised on appeal.

*By the Court.*—Judgment reversed in part and cause remanded for further proceedings.