AMERICAN FAMILY MUTUAL INSURANCE Co. and
Christopher T. Lecher, Plaintiffs,

v.

OUTAGAMIE COUNTY, Defendant-Respondent,

Beverly R. SOCHA, Defendant-Appellant,

WEST BEND MUTUAL INSURANCE Co. and
Jennifer L. Greiner, Defendants-Co-Appellants.

Court of Appeals

*No. 2011AP1211. Submitted on briefs April 3, 2012.
—Decided April 17, 2012.*

2012 WI App 60

(Also reported in 816 N.W.2d 340.)

416

On behalf of the defendant-appellant, the cause was submitted on the brief of *John G. Shannon* of *Dye, Foley, Krohn & Shannon, S.C.*, Racine.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of *Michael D. Lawrynk* and *Erik L. Fuehrer* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Samuel C. Hall, Jr.* and *Timothy M. Johnson* of *Crivello Carlson, S.C.*, Milwaukee.

Before Hoover, P.J., Peterson and Mangerson, JJ.

¶ 1. PETERSON, J. Beverly Socha, Jennifer Greiner, and West Bend Mutual Insurance Company appeal a judgment dismissing all claims and cross-claims against Outagamie County stemming from a car accident allegedly caused by a County employee's negligent direction of traffic. The circuit court concluded the County was entitled to governmental immunity under Wis. Stat. § 893.80(4).[1] Socha, Greiner, and West Bend argue the County is not immune because the

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

417

ministerial duty and known danger exceptions to governmental immunity apply. We reject these arguments and affirm.[2]

## BACKGROUND

¶ 2. On May 14, 2009, the County was performing road construction on Highway JJ, close to an intersection with Highway N. Highway JJ runs east-west, and Highway N runs north-south. Under normal circumstances, both highways are two-lane roads, with one lane of traffic running in each direction. At the intersection of the highways, traffic on Highway JJ is controlled by stop signs, and traffic on Highway N is uncontrolled.

¶ 3. Because of the road construction, the County closed the westbound lane of traffic on Highway JJ about 600–800 feet east of the intersection with Highway N. Consequently, both directions of traffic on Highway JJ had to use the eastbound lane. To control both directions of traffic on the one-lane road, two County employees acted as "flaggers": Ryan Barker was positioned about 600–800 feet east of the intersection of Highways JJ and N, and Richard Harper was positioned at the intersection. Barker and Harper were equipped with signs, or "paddles," that said "SLOW" on one side and "STOP" on the other.

---

[2] The County argues that, even if governmental immunity does not apply, summary judgment was nevertheless proper because Socha, Greiner, and West Bend failed to file proper notices of claim under Wis. Stat. § 893.80(1). Because we affirm based on governmental immunity, we need not address the County's alternative argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W.2d 663 (1938) (only dispositive issues need be addressed).

¶ 4. At about 8 a.m., Barker released a group of about eight to ten cars to travel west on Highway JJ through the single-lane zone, toward the intersection with Highway N. Socha was driving the first car in this group. When Socha reached the intersection where Harper was positioned, she stopped her vehicle. There is a factual dispute about what happened next. Socha contends that Harper stopped a car proceeding northbound on Highway N, then turned the "SLOW" side of his paddle to Socha and motioned for her to proceed through the intersection. Socha's view to the north on Highway N was completely blocked by construction equipment. She proceeded into the intersection, and was struck from the north by Greiner's vehicle, which was traveling southbound on Highway N. The collision of the Socha and Greiner vehicles caused a second impact with Christopher Lecher's vehicle, which had been stopped on Highway JJ on the west side of the intersection.

¶ 5. At his deposition, Harper could not recall whether he showed the "SLOW" side of his paddle to Socha before the accident, although he acknowledged telling a sheriff's deputy he had done so. He could not remember whether he intended to show Socha the "SLOW" side of the paddle. He testified that, in the moments before the collision, "the only thing I can recall is trying to stop the vehicle coming from the south" to prevent that vehicle from turning into oncoming traffic on Highway JJ. Harper did not recall seeing Greiner's vehicle before the collision.

¶ 6. Lecher and his insurer, American Family Mutual Insurance Company, filed a small claims action against the County, Socha, Greiner, and West Bend, which insured both Socha and Greiner. Socha and West Bend filed a cross-claim against the County, alleging

that the County's negligence caused the accident and that Socha had sustained personal injuries and property damage. Because Socha alleged losses in excess of $10,000, the case proceeded under WIS. STAT. chs. 801 to 847. Greiner and West Bend subsequently filed a second cross-claim against the County, alleging the County was liable for Greiner's damages.

¶ 7. The County moved for summary judgment, arguing it was entitled to governmental immunity under WIS. STAT. § 893.80(4).[3] Socha, Greiner, and West Bend contended the ministerial duty and known danger exceptions abrogated immunity. The circuit court granted summary judgment in favor of the County, concluding neither exception applied.

## DISCUSSION

¶ 8. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 12, 236 Wis. 2d 137, 613 N.W.2d 110. A party is entitled to summary judgment when there are no disputed issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Here, the circuit court concluded the County was entitled to judgment as a matter of law due to governmental immunity. The application of the governmental immunity statute and its exceptions to a set of facts presents a question of law, which we review

---

[3] The County's motion was captioned as a motion to dismiss. However, the parties submitted materials outside the pleadings for the court's consideration. Accordingly, we treat the County's motion as one for summary judgment. *See* WIS. STAT. § 802.06(2)(b).

420

independently. *See Heuser v. Community Ins. Corp.*, 2009 WI App 151, ¶ 21, 321 Wis. 2d 729, 774 N.W.2d 653.[4]

¶ 9. The governmental immunity statute, WIS. STAT. § 893.80(4), provides that governmental subdivisions are immunized from liability for their employees' "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." In other words, the statute immunizes governmental subdivisions from liability for "any act that involves the exercise of discretion and judgment." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 21, 253 Wis. 2d 323, 646 N.W.2d 314.

¶ 10. Governmental immunity is subject to several exceptions, which "represent[] a judicial balance

_____

[4] Although some of the facts regarding what Harper did immediately before the collision are disputed, *see supra,* ¶¶ 4–5, these factual disputes go to whether Harper was negligent and, consequently, are not material to the issue on appeal—that is, whether the County is immune from liability for Harper's actions. "The immunity defense assumes negligence, focusing instead on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314. Thus, even though the parties dispute whether Harper intentionally directed Socha's vehicle into the intersection, this factual dispute is not material to the immunity analysis and does not preclude summary judgment. *See id.*, ¶¶ 18–19 (factual dispute about whether officer actually attempted to control traffic went to municipality's negligence, not immunity, and therefore did not preclude summary judgment on immunity grounds).

struck between 'the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.' " *Id.*, ¶ 24 (quoting *C.L. v. Olson*, 143 Wis. 2d 701, 710, 422 N.W.2d 614 (1988)). Socha, Greiner, and West Bend argue two exceptions apply here: the ministerial duty exception, and the known danger exception. We address each exception in turn.

## I. Ministerial duty exception

¶ 11. The ministerial duty exception to governmental immunity recognizes that "immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter." *Id.*, ¶ 25. A duty is ministerial, as opposed to discretionary, if it is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). Socha, Greiner, and West Bend contend the County's direction of traffic on Highway JJ violated three ministerial duties.

¶ 12. First, Greiner and West Bend argue the County violated a ministerial duty "to meet the reasonable expectations of the public that traffic [would] be safely controlled at the time Outagamie County chose to disturb the normal traffic layout and use of stop signs at the intersection . . . ." Greiner and West Bend contend that, over time, the public comes to reasonably rely on the configuration of a particular road. This reasonable reliance, they argue, imposes a ministerial duty on the governmental entity controlling the road to meet the

public's reasonable expectations for safe travel. They contend that, if a municipality undertakes a construction project that alters the traffic flow, "it must provide traffic control which makes [the road] reasonably safe for motorists."

¶ 13. We disagree. The first step in the ministerial duty analysis is to identify a source of law or policy that imposes the alleged duty. *Pries v. McMillon*, 2010 WI 63, ¶ 31, 326 Wis. 2d 37, 784 N.W.2d 648. Greiner and West Bend have not done so. They merely argue, in general terms, that a municipality that alters the normal course of traffic on a road must take measures to ensure the public can safely travel on the road. They do not point to any statute, regulation, or policy that imposes this duty. Consequently, they have failed to identify a ministerial duty "positively imposed by law[.]" *See Lodl*, 253 Wis. 2d 323, ¶ 26 (quoting *Meyer v. Carman*, 271 Wis. 329, 332, 73 N.W.2d 514 (1955)).

¶ 14. Moreover, even assuming the County had a duty to ensure reasonably safe travel during the road construction on Highway JJ, this duty would be discretionary, not ministerial. How to safely control traffic in a construction zone is an inherently discretionary decision, requiring the County to exercise its judgment. Here, the County could have chosen to control traffic at the intersection of Highways JJ and N by putting up temporary traffic lights or by erecting temporary stop signs on Highway N. Alternatively, it could have rerouted traffic from these highways onto other roads. However, the County made a discretionary decision to reject these options and instead place flaggers at and near the intersection. Again, Greiner and West Bend have not identified any law or policy that foreclosed the

County from exercising its judgment in this regard and instead imposed an "absolute, certain and imperative" duty to control traffic by some other means.

¶ 15. To the extent Greiner and West Bend argue the County could not use a flagger to control traffic because doing so was not reasonably safe, their argument goes to whether the County's decision was negligent, not whether the County is entitled to immunity. The immunity analysis assumes negligence and focuses instead on whether the municipal action or inaction giving rise to liability was discretionary, and therefore entitled to immunity. *See id.*, ¶ 17. Assuming the County had a duty to provide traffic control to make the construction zone reasonably safe for motorists, that duty is not precise and detailed enough to eliminate the County's discretion in deciding how to control traffic. Accordingly, even if the County was negligent, it did not violate a ministerial duty.

¶ 16. Greiner and West Bend rely on two cases— *Firkus v. Rombalski*, 25 Wis. 2d 352, 130 N.W.2d 835 (1964), and *Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co.*, 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777—to support their argument that a municipality has a ministerial duty to "meet the public's reasonable safety expectations" when it alters the traffic flow. However, these cases are distinguishable. In *Firkus*, our supreme court held that, while a municipality has no affirmative duty to erect a stop sign, after it does so it must properly maintain the sign and may not remove the sign without fair warning to the traveling public. *Firkus*, 25 Wis. 2d at 358–59. Here, the County did not remove the stop signs on Highway JJ; it closed one lane of the highway, placed signs warning motorists of the construction, and placed flaggers at

and near the intersection to direct traffic. Nothing in *Firkus* prevents the County from exercising its discretion in this manner.

¶ 17. In *Physicians Plus*, the court concluded that a landowner, a county, and a town could be held liable for maintaining a public nuisance, consisting of tree branches that obscured motorists' view of a stop sign at a highway intersection. *Physicians Plus*, 254 Wis. 2d 77, ¶ 68. However, the court was never asked to determine whether the county and the town were immune from suit under Wis. Stat. § 893.80(4) or whether they had a ministerial duty to trim the branches. Instead, the court considered and rejected the municipalities' argument that public policy considerations should limit their liability. *Id.*, ¶¶ 53, 58, 64–65, 67. Thus, *Physicians Plus* does not support Greiner and West Bend's argument that the County had a ministerial duty to provide traffic control that met the public's reasonable expectations for safe travel.

¶ 18. Greiner and West Bend next argue the County had a ministerial duty to use more than one flagger at the intersection of Highways JJ and N, so that each flagger could face the direction of the traffic he or she was controlling. As the source of this duty, Greiner and West Bend rely on the Manual on Uniform Traffic Control Devices, a manual adopted by the Wisconsin Department of Transportation pursuant to Wis. Stat. § 84.02(4)(e). Under Wis. Stat. § 349.065, traffic control devices placed and maintained by local authorities must conform to the provisions of the Manual.

¶ 19. The 2003 edition of the Manual, which was in effect on the date of the accident, classifies its provisions into four categories: standards, guidances, options, and supports. U.S. Dep't of Transp., MANUAL ON

425

UNIFORM TRAFFIC CONTROL DEVICES, I-1, I-3 (2003), *available at* http://mutcd.fhwa.dot.gov/pdfs/2003/pdf-index.htm. Of the four categories, only those provisions designated as standards are mandatory. *Id.* at I-1.

¶ 20. Greiner and West Bend cite the following standard on using paddles to direct traffic as the source of a ministerial duty:

> The following methods of signaling with paddles shall be used:
>
> A. To stop road users, **the flagger shall face road users** and aim the STOP paddle face toward road users in a stationary position with the arm extended horizontally away from the body. The free arm shall be held with the palm of the hand above shoulder level toward approaching traffic.
>
> B. To direct stopped road users to proceed, **the flagger shall face road users** with the SLOW paddle face aimed toward road users in a stationary position with the arm extended horizontally away from the body. The flagger shall motion with the free hand for road users to proceed.
>
> C. To alert or slow traffic, **the flagger shall face road users** with the SLOW paddle face aimed toward road users in a stationary position with the arm extended horizontally away from the body.

*Id.* at 6E-2 (emphasis added). According to Greiner and West Bend, this standard creates a ministerial duty on the part of the County, once it has chosen to use flaggers, to use enough flaggers so that each one can face and control a single direction of traffic. They argue the County violated this duty by placing only one flagger at the intersection of Highways JJ and N because that flagger had to control four directions of traffic.

426

¶ 21. We are not persuaded the Manual imposed a ministerial duty on the County to use more than one flagger. The standard cited by Greiner and West Bend does not say anything about the number of flaggers a municipality must use in a given situation. It does not state that one flagger cannot control multiple directions of traffic. Instead, the standard describes the particular movements a flagger should make to stop traffic, to slow it, or to direct it to proceed. Although the standard states that a flagger "shall face road users" when accomplishing each of these tasks, it does not state that a flagger must face one direction of traffic at all times. For instance, nothing in the standard prohibits a flagger who has stopped one direction of traffic from turning away from that traffic and directing another direction of traffic to proceed. Thus, the Manual does not create a ministerial duty to use multiple flaggers when multiple directions of traffic must be controlled.

¶ 22. Greiner and West Bend contend a "fact question" exists regarding whether the Manual creates a ministerial duty. Consequently, they argue summary judgment was inappropriate and the issue should be resolved by a jury. Greiner and West Bend are mistaken. The existence of a ministerial duty is a question of law, not fact, and can properly be resolved on summary judgment. *See Lodl*, 253 Wis. 2d 323, ¶¶ 17, 48.

¶ 23. Finally, Socha argues Harper, as a County employee, had a ministerial duty not to release Socha's vehicle into the intersection of Highways JJ and N until the intersection was clear. She describes this duty as "absolute and imperative." However, she does not identify any legal authority for this allegedly ministerial duty—she does not cite any statute, rule, or policy dictating when a flagger may release traffic into an

intersection. Consequently, Socha has failed to identify a ministerial duty that is positively imposed by law. *See id.*, ¶ 26.

¶ 24. Furthermore, we agree with the County that a flagger who is directing traffic must make split-second decisions that require the flagger to use his or her judgment. The exercise of judgment is a hallmark of a discretionary, as opposed to ministerial, act. *See Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, ¶ 25, 235 Wis. 2d 409, 611 N.W.2d 693. We agree with the County that, while directing traffic on Highway JJ, Harper had discretion to choose the course of action he thought was safest under the circumstances. Here, Harper testified he was focused on stopping the northbound car on Highway N, and did not see Greiner's southbound vehicle before releasing Socha's vehicle into the intersection. Harper thus exercised discretion in releasing Socha's vehicle. Although Harper's decision may ultimately have been negligent, his negligence is irrelevant to the immunity analysis, which instead focuses on the discretionary nature of his acts. *See Lodl*, 253 Wis. 2d 323, ¶ 17.

## II. Known danger exception

¶ 25. Socha, Greiner, and West Bend next argue the known danger exception to governmental immunity applies. The known danger exception abrogates immunity in situations where an obviously hazardous situation exists and "the nature of the danger is compelling and known to the [public] officer and is of such force that the public officer has no discretion not to act." *Olson*, 143 Wis. 2d at 715. In other words, the known

danger exception applies when "there exists a danger that is known and compelling enough to give rise to a ministerial duty on the part of a municipality or its officers." *Lodl*, 253 Wis. 2d 323, ¶ 4.

¶ 26. The known danger exception does not apply whenever a dangerous situation exists. *Id.*, ¶ 40. Instead, the exception is reserved for situations that are more than unsafe, where the danger is so severe and immediate that a specific and immediate response is required. *Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶ 14 n. 7, 319 Wis. 2d 622, 769 N.W.2d 1. Stated differently, the exception applies in circumstances that are "accidents waiting to happen," where injury is almost certain to occur. *Voss v. Elkhorn Area Sch. Dist.*, 2006 WI App 234, ¶ 19, 297 Wis. 2d 389, 724 N.W.2d 420.

¶ 27. Greiner and West Bend argue the County created a known and compelling danger by altering a functioning intersection, forcing both eastbound and westbound traffic to use a single lane, and providing a single flagger to direct traffic at the intersection. However, they do not explain why this alleged danger was so compelling as to give rise to a ministerial duty, nor do they explain what particular response on the part of the County was required. *See Lodl*, 253 Wis. 2d 323, ¶ 44 (For purposes of the known danger exception, "[a] ministerial duty is not an undifferentiated duty to act but a duty to act *in a particular way*[.]"). We do not agree that the alleged hazard created by the County in this case was so clear and absolute, and so certain to cause injury, as to constitute a known and compelling danger.

¶ 28. Moreover, to the extent Greiner and West Bend argue the County was required to provide more than one flagger to control the intersection, we agree

with the County that argument is foreclosed by *Lodl*. In *Lodl*, an accident occurred at an intersection after a power outage rendered the traffic lights inoperable. *Id.*, ¶¶ 6, 10. Before the accident, a sergeant "dropped," or opened, the folded stop signs affixed to the poles of the traffic lights. *Id.*, ¶ 7. A police officer also responded to the intersection and requested backup and portable stop signs. *Id.*, ¶ 8. However, the accident occurred before backup or portable signs arrived. *Id.*, ¶ 10. The plaintiff argued the inoperable traffic lights were a known and compelling danger that required the responding officer to manually direct traffic, rather than requesting backup and signs.

¶ 29. The supreme court disagreed, concluding, "[w]hile the circumstances posed by the uncontrolled intersection were certainly known and dangerous, the situation nonetheless allowed for the exercise of the officer's discretion as to the mode of response." *Id.*, ¶ 46. In other words, while dangerous, the situation did not compel a particularized, nondiscretionary response by the responding officer. The officer had discretion to conclude, in his judgment, that the situation at the intersection was not conducive to manual traffic control by a single officer. *Id.*, ¶ 47. Furthermore, the officer took some action to respond to the danger, rather than simply doing nothing in the face of a hazard. *Id.*, ¶¶ 46–47.

¶ 30. Like the officer in *Lodl*, the County had discretion to decide how to address any danger presented by the lane closure at the intersection of Highways JJ and N. The County took some action to respond to the potential danger, placing flaggers at and near the intersection to control traffic. Although the County could have used other measures to control traffic, such as additional flaggers or temporary traffic lights, the

430

County was not required to do so. The potentially dangerous situation at the intersection did not compel any particularized response by the County, and, like the officer in *Lodl*, the County did something to address the potential danger.

¶ 31. Socha argues the "extremely hap[]hazard and dangerous traffic control at the intersection gave rise to a known danger." She contends that Harper should not have directed her vehicle into the intersection before ensuring it was free from oncoming traffic. However, Socha's argument goes to Harper's alleged negligence, rather than the existence of a known and compelling danger. *See Noffke v. Bakke*, 2009 WI 10, ¶ 57, 315 Wis. 2d 350, 760 N.W.2d 156. Again, the immunity defense assumes negligence, *Lodl*, 253 Wis. 2d 323, ¶ 17, and Harper's assumed negligence is not relevant to the known and compelling danger analysis.

*By the Court.*—Judgment affirmed.