GUNDRUM, J.
¶1 Danielle Jackson, a former inmate at the Robert E. Ellsworth Correctional Center, a state correctional facility, was working as a cook in the kitchen of the facility on March 4, 2014, when Kettle Number One tipped, spilling boiling water on her and causing her significant burn injuries.
¶2 Jackson sued the respondents, all of whom were state employees employed by the facility, alleging her injuries were the result of their negligence in failing to repair Kettle Number One, remove it from use, or warn kitchen staff with regard to its use. The respondents moved for summary judgment based upon governmental immunity. Rejecting Jackson's contention that the respondents breached ministerial, not discretionary, duties and/or that the known, present, and compelling danger exception to immunity applied, the circuit court granted the respondents' motion. Jackson appeals. We affirm.
Background
¶3 The undisputed, relevant facts from the summary judgment record are as follows.
¶4 Prior to Jackson's injury, the facility had used the same four cooking kettles in the kitchen for "[m]any, many years." On November 7, 2012, kitchen employee Brad Pirwitz submitted a repair order to the maintenance department via a computer system, which order stated "gears stripped on kettles." In his deposition in this case, respondent/maintenance employee Curtis Moldenauer[1] testified he examined the kettles on March 18, 2013, and noticed that all of them had "some wear." With regard to Kettle Number One, he noted in a maintenance log dated that same day: "Steam trap sticks closed most of the time. Lid actuator badly worn. Ring gear starting to wear out. Kettle will not stay in place, tips a little." With regard to Kettle Number Two, Moldenauer noted: "Ring gear worn out? Suggested kitchen not use it." With regard to Kettle Number Four, he noted: "Ring gear badly worn." On March 20, 2013, Moldenauer submitted his own repair order, stating "all 4 kettles have frozen or stripped out gears." He testified at his deposition that the gears on all four kettles would have needed to be repaired "[e]ventually." He further testified that despite the issues he noted with the kettles on March 18, he did not believe at the time that they were "unsafe."
¶5 On August 27, 2013, an inmate was injured when Kettle Number Four, the "small kettle," tipped over and spilled hot water on her foot. A document called "Accident Report" was generated following this incident. Comments by respondent Diane Burczyk, the head of the kitchen unit, in the accident report state: "Maintenance needs to fix this kettle so it doesn't tip over. I will do a work order." (Emphasis added.) Kettle Number Four was thereafter taken out of service so it could be repaired, and it was still out of service at the time of Jackson's injury in March 2014.
¶6 On October 16, 2013, kitchen employee Sandy Stout submitted a repair order that stated: "all kettles still need work as far as tipping. Can we take the lids off so they don't whack someone else in the head."
¶7 On March 4, 2014, Jackson was boiling hot dogs in Kettle Number One when it tipped over and caused significant burn injuries to her. As a result of this incident, Jackson filed this lawsuit against respondents Burczyk, Moldenauer, and Allen Kerkman, who was another maintenance employee. The circuit court granted the respondents' motion for summary judgment based upon governmental immunity. Jackson appeals.
Discussion
¶8 When the material facts are undisputed, as in this case, the question of whether governmental immunity shields a public employee from liability, including the question of whether an exception to immunity applies, is a question of law we review de novo. Lodl v. Progressive N. Ins. Co. , 2002 WI 71, ¶17, 253 Wis. 2d 323, 646 N.W.2d 314. Our review of a circuit court's decision on summary judgment is also de novo. Behrendt v. Gulf Underwriters Ins. Co. , 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.
¶9 For purposes of immunity consideration, we assume negligence by the respondents. See Lodl , 253 Wis. 2d 323, ¶17. State officers and employees, such as the respondents, however, "are immune from personal liability for injuries resulting from [negligent] acts performed within the scope of their official duties," Pries v. McMillon , 2010 WI 63, ¶20, 326 Wis. 2d 37, 784 N.W.2d 648 ; for them, "immunity is the rule and liability is the exception," Meyers v. Schultz , 2004 WI App 234, ¶12 n.5, 277 Wis. 2d 845, 690 N.W.2d 873. This rule, however, is subject to two exceptions relevant to this case.
¶10 Immunity does not apply "[i]f liability is premised upon the negligent performance (or non-performance) of a ministerial duty imposed by law or government policy" rather than a discretionary duty. Pries , 326 Wis. 2d 37, ¶22 (citation omitted). In Pries , our supreme court explained that "[a] public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." Id. (citation omitted). Stated otherwise, a duty is "ministerial when it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the [public] officer's judgment or discretion." Id. (citation omitted).
¶11 Immunity also does not apply where liability is based upon a public officer's failure to properly respond to a particular danger that is known, present and of such compelling force that a public officer "has no discretion not to act" and "the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." Lodl , 253 Wis. 2d 323, ¶¶34, 38 (citations omitted). "The focus is on the specific act the public officer or official is alleged to have negligently performed or omitted." Id. , ¶40. "It is not enough that the situation require the employee to 'do something' about it." Voss v. Elkhorn Area Sch. Dist. , 2006 WI App 234, ¶18, 297 Wis. 2d 389, 724 N.W.2d 420 (citation omitted). The known danger exception has been "reserved for situations that are more than unsafe, where the danger is so severe and immediate that a specific and immediate response is required." American Family Mut. Ins. Co. v. Outagamie Cty. , 2012 WI App 60, ¶26, 341 Wis. 2d 413, 816 N.W.2d 340 (citing Umansky v. ABC Ins. Co. , 2009 WI 82, ¶14 n.7, 319 Wis. 2d 622, 769 N.W.2d 1 ).
¶12 On appeal, Jackson explains the basis for her claim that the respondents are not entitled to governmental immunity:
Prior to Jackson's injury, the state employees recognized the kettles were prone to tipping and causing burn injuries. Burczyk was the kitchen supervisor and general manager at the time. Burczyk issued orders to Moldenauer and Kerkman, who were maintenance employees, to repair the kettles six months prior to Jackson's injury, but those orders were not performed. Meanwhile, Burczyk kept the kettles in use in a defective and dangerous condition until the time of Jackson's injury.
As indicated, Jackson contends governmental immunity does not apply because the respondents failed to fulfill a ministerial duty and/or because continued use of the "kettles" constituted a known, present, and compelling danger. Jackson bears the burden of demonstrating that one of the exceptions to the rule of immunity applies, see Kimps v. Hill , 200 Wis. 2d 1, 18-19, 546 N.W.2d 151 (1996). She has not satisfied this burden.
¶13 We note at the outset that Jackson frames her claim of a ministerial duty and/or a known, present, and compelling danger by representing that prior to her injury Burczyk had "issued orders ," plural, to Moldenauer and Kerkman to repair "the kettles." This is a misrepresentation. It is undisputed in the record that, at most, Burczyk submitted only one repair order to the maintenance department where Moldenauer and Kerkman worked, which repair order is not itself in the record.
Burczyk
Discretionary v. Ministerial Duty
¶14 In her brief-in-chief, Jackson does not identify a law or policy which required Burczyk to take any particular action at any particular time or under any particular circumstances with regard to Kettle Number One, or any of the kettles for that matter. In its response brief, the State points this out stating, "Jackson makes no effort to show that [Burczyk] negligently performed a ministerial duty." In her reply brief, Jackson provides nothing to counter this statement or show that a law or policy created a ministerial duty for Burczyk with regard to Kettle Number One or "the kettles" more generally. Instead, Jackson only focuses on an alleged ministerial duty of Moldenauer and Kerkman.[2] Jackson has abandoned any allegation that Burczyk had a ministerial duty that she breached.
Known, Present, and Compelling Danger
¶15 In her brief-in-chief, Jackson claims the "state employees" knew of a present and compelling danger because "Burczyk ... issue[d] a work order to prevent future injuries: 'Maintenance needs to fix this kettle so it doesn't tip over. I will do a work order.' " While Jackson highlights the word "needs," what should be highlighted are the words "this kettle."
¶16 The record unambiguously shows that this comment by Burczyk was not in fact part of a "work order" but was instead a comment she made in the accident report related to the August 2013 incident. Significantly, this comment related to a different kettle-Kettle Number Four, the "small kettle"-than the kettle that injured Jackson seven months later-Kettle Number One. As previously noted, Kettle Number Four was taken out of service following the August 2013 incident and was still out of service at the time of Jackson's injury in March 2014. While Jackson suggests this comment by Burczyk was a "work order to repair the kettles ," it was no such thing. (Emphasis added.) This Kettle-Number-Four -specific accident-report (not repair-order) comment by Burczyk provides no indication she was aware Kettle Number One may have posed a danger "so severe and immediate that a specific and immediate response [was] required," see American Family Mutual Insurance Co. , 341 Wis. 2d 413, ¶26, and Jackson has identified no such evidence. Jackson has not established that the known, present, and compelling danger exception to governmental immunity applies to Burczyk.
Moldenauer and Kerkman
Discretionary v. Ministerial Duty
¶17 Jackson claims Moldenauer and Kerkman breached a ministerial duty that was established by "the internal work orders to repair the defective tilt gears on the kettles." We disagree. Although repair orders were submitted that identified concerns related to the kettles, including Kettle Number One, we agree with the State that "it was left to the discretion of the maintenance staff when and how those repairs were to be completed, and what priority those repairs should take vis-à-vis other" responsibilities of their job. Nothing in the repair orders suggests otherwise.
¶18 The repair orders, dated November 7, 2012, March 20, 2013, and October 16, 2013, respectively state: "gears stripped on kettles," "all 4 kettles have frozen or stripped out gears," and "all kettles still need work as far as tipping. Can we take the lids off so they don't whack someone else in the head." As previously stated, a duty is ministerial only if "it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the [public] officer's judgment or discretion." Pries , 326 Wis. 2d 37, ¶22 (quoting Lodl , 253 Wis. 2d 323, ¶26 ). None of these repair orders even comes close to meeting the specificity necessary to create a ministerial duty. See , e.g. , Kimps , 187 Wis. 2d at 508, 519 ("Had [the safety officer's] job description included: 'Tighten screws on volleyball standards every Tuesday at 8:30 a.m.,' this would be the 'absolute, certain and imperative' duty required" to create a ministerial duty. (citing Sheridan v. City of Janesville , 164 Wis. 2d 420, 425, 474 N.W.2d 799 (Ct. App. 1991) ). Indeed, these repair orders are not even directive, but are instead informative, i.e., they are providing information regarding the condition of the kettles, not directing that any particular action be taken by anyone at any particular time. What was to be done with the kettles, how it was to be done, and when it was to be done required the exercise of judgment, which "is a hallmark of a discretionary, as opposed to ministerial, act." See American Family Mut. Ins. Co. , 341 Wis. 2d 413, ¶24 (citing Willow Creek Ranch, L.L.C. v. Town of Shelby , 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693 ).
¶19 Moreover, although Kerkman testified that "[a]nyone from a first class guard, all the way up to supervisor" could submit a repair order, Jackson has identified no evidence in the record, and we are unable to find any, indicating any of the three individuals who submitted repair orders-Pirwitz, Moldenauer, or Stout-had the authority to require Moldenauer or Kerkman to take any particular action regarding the kettles at any particular time.[3] Jackson has identified no case law, or evidence, supporting the conclusion that repair orders such as these here could even constitute a law or policy creating a ministerial duty without the repair order coming from a person with clear authority to require the repair be made. See Kimps , 187 Wis. 2d at 518-20 (indicating that a request that a repair be made, as opposed to an "order" by someone with authority, does not create a ministerial duty).
¶20 With regard to Burczyk's comment, "Maintenance needs to fix this kettle so it doesn't tip over. I will do a work order," it is, again, indisputable that this comment was made in the accident report, not a repair order, related to Kettle Number Four , due to the August 2013 injury to a different inmate. (Emphasis added.) Furthermore, Jackson has identified no evidence in the record, and we are unable to find any, indicating this accident report was ever even received or reviewed, or should have been received or reviewed, by maintenance staff such as Moldenauer or Kerkman prior to Jackson's March 4, 2014 injury, and Moldenauer testified that he had never seen the report prior to his 2017 deposition in this case.
¶21 Consistent with her accident-report comment indicating she "will do a work order," Burczyk did testify that following the August 2013 incident she also submitted a repair order through the computer system. She further agreed at her deposition that Moldenauer and Kerkman "would have received that repair order." However, the repair order itself is not in the record, and there is no evidence we can find indicating what exactly that repair order stated. Burczyk's accident-report comment indicates her concern at the time related to "this kettle," i.e., the kettle that had just caused injury to the inmate's foot-Kettle Number Four-not Kettles Number One, Two or Three. Without the specific words of Burczyk's repair order, Jackson cannot meet her burden of showing the order required Moldenauer and/or Kerkman to perform a particular repair, in a particular way, at a particular time and thus created a ministerial duty as to them with regard to Kettle Number One. Jackson has not demonstrated that the ministerial duty exception applies to Moldenauer or Kerkman. See Pries , 326 Wis. 2d 37, ¶22.
Known, Present, and Compelling Danger
¶22 While Jackson appears to focus her known, present, and compelling danger argument on Burczyk,[4] she does write in her briefing that "the state employees" were aware of a present and compelling danger. Thus, for purposes of completeness we consider whether this immunity exception applies to Moldenauer and Kerkman.
¶23 Throughout her briefing, Jackson relies in significant part upon Burczyk's Kettle-Number-Four-related "Maintenance needs to fix this kettle so it doesn't tip over. I will do a work order" comment in the August 2013 accident report for Jackson's contention that Moldenauer and Kerkman were aware of a known, present, and compelling danger. As noted, however, Jackson has identified no evidence, and we are unable to find any, indicating that the accident report or this comment therein ever did reach or should have reached Moldenauer or Kerkman. Indeed, also as indicated, Moldenauer testified he had never seen the August 2013 accident report until his 2017 deposition in this case. Burczyk's comment in the accident report provides no support for a conclusion that the known, present, and compelling danger exception should apply to Moldenauer or Kerkman in this case which involves an injury caused by Kettle Number One .
¶24 Assuming that at some point prior to Jackson's injury Moldenauer and/or Kerkman had reviewed the November 7, 2012, March 20, 2013, and October 16, 2013 repair orders (obviously Moldenauer had "reviewed" the March 20, 2013 repair order he himself submitted), as well as the repair order related to the August 2013 incident that was supposedly submitted by Burczyk (and which is not in the record), they nonetheless do not identify a present and compelling danger.
¶25 Moldenauer examined all four kettles on March 18, 2013. At his deposition, he identified as the defective part of the kettle
[t]he tilt gears, which allow the operator to tilt the kettle, had wear. After so many years of use, it wears, and that allowed the kettles to tip slightly. The more they used them, the more wear there was, the more they tipped.
Now, we're not talking about tipping over, we're talking about a few degrees of tip.
"Some [kettles] were worse than others," Moldenauer testified. In his March 20, 2013 log, Moldenauer noted the specific condition of three of the four kettles with regard to gears. Regarding Kettle Number One, he noted "Ring gear[5] starting to wear out. Kettle will not stay in place, tips a little"; Kettle Number Two, he noted "Ring gear worn out? Suggested kitchen not use it"; and Kettle Number Four, he noted "Ring gear badly worn." Moldenauer testified that while Kettle Number One had "some wear in the gears," he kept it in service because it appeared to be safe.
With any piece of equipment that's used, it develops wear patterns, and there is a point at which it becomes unsafe. When I inspected the kettles initially, it was not at that point.
How the kettle is used, when it's used may change that from the time that I've seen it. I cannot control those things. So something could become unsafe in the future, but I do not inspect it on a daily basis. The users, the operators, should be doing that.
¶26 Thus, over time and through use, the gears on the kettles-which kettles had been in use for "[m]any, many years" prior to Jackson's injury-would slowly become more worn out, and such wear could eventually lead to tipping, as apparently occurred with Kettle Number Four in August 2013 and Kettle Number One seven months later. As appears to be suggested by Moldenauer's uncontested testimony, any of these kettles could have reached the tipping point, so to speak, months[6] -possibly even years-after Moldenauer's March 2013 examination of them, depending on the level of use of a particular kettle. While Moldenauer may or may not have been negligent in failing to take Kettle Number One-and apparently all the kettles-out of service and/or repair them following his examination of them in March 2013, the incident of August 2013, or the submission of the October 2013 repair order, the circumstances here did not present a known, present, and compelling danger such that he had no choice but to do so immediately following his awareness of any of those markers. Jackson has not shown that Kettle Number One posed a danger of such compelling force that Moldenauer "ha[d] no discretion not to act" and "the time, mode and occasion for performance [was] evident with such certainty that nothing remain[ed] for the exercise of judgment and discretion." See Lodl , 253 Wis. 2d 323, ¶¶34, 38 (citation omitted). The known, present, and compelling danger exception "is reserved for situations that are more than unsafe, where the danger is so severe and immediate that a specific and immediate response is required." See American Family Mut. Ins. Co. , 341 Wis. 2d 413, ¶26 (emphasis added) (citing Umansky , 319 Wis. 2d 622, ¶14 n.7 ). Jackson has failed to convince us that that was the case here.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

Moldenauer was an "HVAC/R[efrigeration] Advanced Specialist," and his job "was to maintain heat systems, refrigeration systems, air conditioning systems ... but it also included any other maintenance that needed to be done" in "the entire facility."

This is underscored by Jackson's ministerial-duty-related closing in her reply brief: "[T]he ministerial duty exception applies based on Moldenauer and Kerkman's failure to comply with Burczyk's work orders."

The record indicates that while Moldenauer was a more experienced member of the maintenance department than Kerkman and had a "higher classification" than him, he was not Kerkman's supervisor.

This is underscored by Jackson's known-danger-exception-related closing in her reply brief: "[T]he known danger exception applies for Burczyk's failure to remove the kettles or warn about their use." (Emphasis added.)

Although Jackson has not identified facts of record to indicate that a "ring gear" is the same as a "tilt gear," Moldenauer's deposition testimony seems to indicate that even if a ring gear and a tilt gear are not the same thing, wear on either can contribute to the tipping of a kettle.

This is evidenced by the fact Kettle Number Four did not tip over until five months after Moldenauer's March 2013 examination of the kettles and Kettle Number One did not tip over until almost a year after that examination. Jackson has not identified, and we are unable to find, any evidence of record indicating Kettle Number Two or Kettle Number Three ever tipped over.