COURT OF APPEALS
DECISION
DATED AND FILED

June 24, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP482**

Cir. Ct. No. **2018CV1091**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

VINCENT FOREMAN-ANTE BY HIS GUARDIAN AD LITEM JAMES A. CARNEY, CHRIS FOREMAN AND ANTONIO ANTE,

PLAINTIFFS-RESPONDENTS,

DEAN HEALTH PLAN, INC.,

INVOLUNTARY-SUBROGATED-PLAINTIFF,

V.

EDGERTON SCHOOL DISTRICT AND EMCASCO INSURANCE COMPANY,

DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Fitzpatrick, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Vincent Foreman-Ante participated in a psychology class activity at Edgerton High School.  As a part of that activity, Vincent was instructed by a teacher to wear a blindfold over his eyes and to move across the school fieldhouse with the assistance of another student who was to give verbal cues to Vincent.  Vincent was injured during the activity when he collided with a wall.

¶2      Vincent and his parents brought this action against the Edgerton School District and its liability insurer, Emcasco Insurance Company, in the Rock County Circuit Court alleging that the negligence of Vincent's teacher caused Vincent's injuries.[1]  The School District moved for summary judgment, arguing that it is entitled to governmental immunity under WIS. STAT. § 893.80(4) (2019-20),[2] and Vincent argued in response that the known danger exception to

---

[1] For convenience, we refer to the School District and Emcasco Insurance Company collectively as "the School District" and refer to Vincent and his parents as "Vincent."

[2] WISCONSIN STAT. § 893.80(4) states:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

governmental immunity applies in these circumstances.[3]  The circuit court denied the School District's motion in an oral ruling and in a written order.  The circuit court did not explicitly grant summary judgment to Vincent in its oral ruling or in a written order.  Nonetheless, in its oral ruling on the School District's summary judgment motion, the circuit court stated:  "I believe the [known danger] exception applies here.  There is no governmental immunity, and I am denying the motion for summary judgment."  We conclude that the circuit court intended to grant summary judgment in favor of Vincent on the issue of governmental immunity.

¶3      The School District filed a petition for leave to appeal, based on its request that we reverse the circuit court's summary judgment decision and, instead, hold that the School District is entitled to governmental immunity.  We granted the petition for leave to appeal.  *See* WIS. STAT. § 809.50(3).

¶4      For the reasons that follow, we affirm the circuit court's denial of the School District's motion for summary judgment because, based on the summary judgment materials, there are genuine issues of material fact concerning the School District's claim of governmental immunity and concerning Vincent's contention that the known danger exception to governmental immunity applies in these circumstances.  It then follows that those same factual disputes require reversal of the circuit court's ruling that the School District is not entitled to governmental immunity based on the known danger exception.  We therefore remand this matter to the circuit court for further proceedings consistent with this opinion.

---

[3] "The 'known danger' exception to municipal and public officer immunity under WIS. STAT. § 893.80(4) is a narrow, judicially-created exception that arises only when there exists a danger that is known and compelling enough to give rise to a ministerial duty on the part of a municipality or its officers." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶4, 253 Wis. 2d 323, 646 N.W.2d 314.

**BACKGROUND**

¶5      The following material facts are gleaned from the submissions of the parties and the orders of the circuit court.

¶6      Peter Lien has been a high school teacher for the Edgerton School District for over twenty years.  Lien has taught a psychology course two to three times per year since 2010.  As part of that course, Lien had students perform an activity that Lien adapted from a psychology class textbook in which students would attempt to navigate within the school while blindfolded.[4]  Each student was paired with another student for the blindfold activity.  Lien described his goals for the students as follows:  "The idea is that their sense of sight is gone and so their other senses are picking up things that maybe they haven't in the past …."  The general instructions given to the students were that:

> No one is to go outside.  No elevators.  You're not to run someone into a wall or do things that are going to cause harm to someone….
>
> ….
>
> If they are getting close to a wall, say 'Stop' or you might say 'Shuffle to the right' or 'Shuffle to the left.'  I'll give them kind of those type of verbal instructions before we go.
>
>     I don't give [the non-blindfolded partner] a distance how close they need to be [to the blindfolded partner], but the understanding is they are with their partner the whole time.

¶7      The activity was divided into two parts.  During the first part of the activity, each student spent approximately ten minutes walking around the school

---

[4] Throughout this opinion, we refer to the activity Lien had the students engage in as "the blindfold activity" or simply as "the activity."

hallways while blindfolded while the other student verbally guided the blindfolded partner.

¶8 The second part of the blindfold activity took place in the school fieldhouse. As described by Lien, during the second part, the blindfolded partner was to attempt to "walk in a straight line," and the non-blindfolded partner would act "as a guide" for the blindfolded partner to make sure the blindfolded partner "[did not] get hurt." Students performed this exercise at the same time as the other partner pairs, such that multiple blindfolded students would be navigating the fieldhouse simultaneously. On the date of the incident, Lien had the twenty to twenty-five students in the psychology course, including Vincent, perform the second part of the blindfold activity. The students were at one end of the fieldhouse and were instructed by Lien to walk a straight line to approximately the middle of the fieldhouse. But, Vincent "went approximately twice as far as he was instructed to go." Lien's expectation was not for the blindfolded students to run, but to see how well they were able to travel in a straight line.

¶9 Vincent testified that he did not remember the exact words used by Lien when he instructed the class on the second part of the blindfold activity. However, Vincent testified that in his view Lien "effectively told us to run and that our partners would prevent us – would tell us if we were going to hit anything or something to that effect." Vincent was partnered with another student. After Lien told the blindfolded students to start, Vincent "start[ed] running immediately" at a "relatively fast" pace that was "more than a jog" but "less than a sprint." Lien did not see Vincent running because Vincent was on the far end of the fieldhouse near the wall. Vincent did not hear the student he was partnered with give any verbal directions to him. After Vincent collided with the wall, the

student Vincent was partnered with told Vincent that he had been telling him to stop.

¶10    Vincent cannot recall how loud it was in the fieldhouse at or before the time of his accident.  There is no evidence in the record concerning Lien's perception of how loud it was in the fieldhouse at that time.  One student who participated in the blindfold activity stated that "[i]t was extremely loud in the field house, and I was unable to make out anything anyone was saying."

¶11    Lien had the students perform the blindfold activity two or three times per school year for eight years prior to Vincent's accident.  He was not aware of any student who had tripped or fallen during the exercise, or of any student who was injured in the activity, before Vincent's accident.

¶12    Vincent brought this negligence action against the School District to recover money damages for injuries sustained during the blindfold activity.  The School District filed a motion in the circuit court for summary judgment asserting that it is entitled to immunity from Vincent's negligence claim under WIS. STAT. § 893.80(4).  Section 893.80(4) grants immunity to governmental entities and their employees from liability for acts involving the exercise of discretion or judgment. *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶¶20-21, 253 Wis. 2d 323, 646 N.W.2d 314.  Vincent opposed the School District's request for summary judgment based on the "known danger exception" to governmental immunity under § 893.80(4).

¶13    The circuit court denied the School District's motion in an oral ruling and in a written order.  Vincent did not request that summary judgment be granted in his favor on the issue of governmental immunity in either a motion for summary judgment, his briefing on the School District's motion, or on the record

6

at the argument before the circuit court. The circuit court did not explicitly grant summary judgment to Vincent in its oral ruling or a written order. Nonetheless, in its oral ruling, the court stated: "I believe the [known danger] exception applies here. There is no governmental immunity, and I am denying the motion for summary judgment." As noted, we conclude that the court intended to grant summary judgment to Vincent on the issue of governmental immunity and application of the known danger exception. *See* WIS. STAT. § 802.08(6) (stating that summary judgment may be granted to the non-moving party).

¶14    The School District filed a petition with this court for leave to appeal the circuit court's nonfinal order denying its motion for summary judgment, and Vincent agreed that the petition should be granted. We granted the School District's petition pursuant to WIS. STAT. § 808.03(2).

### DISCUSSION

¶15    The School District argues that the circuit court erred in denying its motion for summary judgment. In particular, the School District argues that the blindfold activity was not sufficiently dangerous to trigger the "known danger" exception to municipal and public officer immunity under WIS. STAT. § 893.80(4). For his part, Vincent does not request directly that we grant summary judgment in his favor but, rather, asks this court to "affirm the decision" of the circuit court.

### I. Standard of Review and Governing Principles on Summary Judgment and Governmental Immunity.

¶16    We begin by setting forth our standard of review and governing principles regarding summary judgment, governmental immunity, and the known danger exception to governmental immunity.

7

### A. Standard of Review and Summary Judgment.

¶17     On a summary judgment motion, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *see Bank of N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. This court reviews a grant or denial of summary judgment de novo using the same methodology employed by the circuit court. *Bank of N.Y. Mellon*, 381 Wis. 2d 218, ¶31; *Summers v. Touchpoint Health Plan, Inc.*, 2006 WI App 217, ¶7, 296 Wis. 2d 566, 723 N.W.2d 784.

¶18     In evaluating summary judgment materials, we view the evidence, and reasonable inferences from that evidence, in the light most favorable to the party opposing summary judgment. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980); *see United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807; *see, e.g.*, *Accuweb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶30, 308 Wis. 2d 258, 746 N.W.2d 447 (concluding that "enough evidence existed to support reasonable inferences sufficient to defeat a motion for summary judgment"). "[I]f more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294. Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law. *Burbank Grease Servs., LLC v. Sokolowski*, 2005 WI App 28, ¶10, 278 Wis. 2d 698, 693 N.W.2d 89, *rev'd in part on other grounds*, 2006 WI 103, 94 Wis. 2d 274, 717 N.W.2d 781.

## B. Governmental Immunity and the Known Danger Exception.

¶19    WISCONSIN STAT. § 893.80(4) immunizes school districts, among other governmental units, from liability for acts that involve the exercise of discretion or judgment. *Heuser ex rel. Jacobs v. Community Ins. Corp.*, 2009 WI App 151, ¶20, 321 Wis. 2d 729, 774 N.W.2d 653.  There are four exceptions to governmental immunity.  *Id.* (citing *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶41, 315 Wis. 2d 350, 760 N.W.2d 156).  In this case, the only exception at issue is the exception for "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees."  *See Noffke*, 315 Wis. 2d 350, ¶42.  This "known danger" exception to municipal and public officer immunity "arises only when there exists a danger that is known and compelling enough to give rise to a ministerial duty on the part of a municipality or its officers."  *Lodl*, 253 Wis. 2d 323, ¶4.

¶20    The known danger exception to governmental immunity does not apply in every circumstance.  *American Fam. Mut. Ins. Co. v. Outagamie Cnty.*, 2012 WI App 60, ¶26, 341 Wis. 2d 413, 816 N.W.2d 340.  Rather, it is reserved for situations "where the danger is so severe and immediate that a specific and immediate response is required."  *Id.*  In other words, the exception applies only when a government actor knows of a danger that is of such a compelling force that "it strips that person of discretion or judgment and creates an absolute, certain and imperative duty to act."  *Heuser*, 321 Wis. 2d 729, ¶23.  Courts have described these dangerous situations as circumstances "where injury is almost certain to occur," *American Family*, 341 Wis. 2d 413, ¶26, or as "accidents waiting to happen," *Voss v. Elkhorn Area School District*, 2006 WI App 234, ¶19, 297 Wis. 2d 389, 724 N.W.2d 420.

¶21    When applying the known danger exception, courts follow a three-step test that analyzes the factual components. Only the first two steps of that test are germane to our analysis. "First, something happens to create compelling danger. Second, a government actor finds out about the danger, making it a known and compelling danger." *Heuser*, 321 Wis. 2d 729, ¶28. Vincent bears the burden of proving that the known danger exception applies to defeat governmental immunity under WIS. STAT. § 893.80(4). *See Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶14, 319 Wis. 2d 622, 769 N.W.2d 1 ("[B]efore the [plaintiffs] [could] proceed to attempt to prove their negligence case, they must first defeat [the defendant's] defense of immunity, to which he [was] entitled as a state employee unless an exception applies.").

¶22    A dispute as to whether there is a ministerial duty based on the known danger exception can be decided on summary judgment. *See American Fam.*, 341 Wis. 2d 413, ¶26. At the same time, however, we must deny a summary judgment motion if the party requesting summary judgment fails to establish that there is no genuine issue as to any material fact. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979). As a result, we have stated that material disputed facts relating to a claim of governmental immunity render summary judgment on that issue inappropriate. *Rolland v. County of Milwaukee*, 2001 WI App 53, ¶12, 241 Wis. 2d 215, 625 N.W.2d 590 ("Rather, giving Rolland the benefit of the doubt, as we must where summary judgment is sought [by the county on its claim that it is immune under WIS. STAT. § 893.80(4)], … her version of the incident raises an issue of material fact: namely whether the driver ignored his mandatory duty not to drive the bus with a wheelchair or scooter passenger aboard unless the passenger was secured." (internal citation omitted)).

## II. Analysis.

¶23 As the first step in our analysis, we consider two arguments of the parties that are central to their positions.

### A. Probability vs. Possibility of Injury.

¶24 An important facet of the School District's argument is its contention that, in order for the known danger exception to apply, the danger must rise to the level of a "probability," rather than to the level of a "mere possibility," of injury. (Bold and italics omitted.) We reject the School District's argument for the following reasons.

¶25 In making that contention, the School District relies on language in *C.L. v. Olson*, 143 Wis. 2d 701, 422 N.W.2d 614 (1988). In *C.L.*, a parole agent permitted a parolee to drive even though the parolee had been previously convicted of sexually assaulting two individuals between the ages of twelve and eighteen. *Id.* at 705. In both of these prior incidents, the parolee used a vehicle to abduct the victims. *Id.* After the parole agent permitted the parolee to drive, the parolee abducted and sexually assaulted C.L. using a vehicle. *Id.* at 705-06. The *C.L.* court concluded that the known danger exception did not apply in that case. *Id.* at 723-34. The court reasoned that:

> While in hindsight we may observe that the [subjective and discretionary] balance [between the danger posed by a parolee and the treatment of the parolee-client] was improperly struck and grieve the tragic consequences, this is not to say that the potential of danger rose to such a *degree of probability* that, in determining whether Olson should be permitted to drive, nothing was left to [the agent's] discretion.

11

> The plaintiff has, on appeal, *failed to demonstrate that the possibility of recidivism was any more than just that – a possibility*.

*Id.* at 723 (emphasis added).

¶26 In *Lodl*, 253 Wis. 2d 323, our supreme court stated that the known danger exception requires a case-by-case inquiry, not bright-line rules as the School District argues. *See id.*, ¶38. The court held that the legal standard in these cases remains the same:

> [A] dangerous situation will be held to give rise to a ministerial duty only when "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion."

*Id.* (quoting *C.L.*, 143 Wis. 2d at 717).

¶27 Contrary to the School District's contention, the few words the School District relies on from *C.L.* did not create a bright-line rule that the known danger exception applies only when the risk of resulting harm is a "probability" and not just a "possibility." Instead, our supreme court instructs that the degree of certainty required to establish a known danger is a "danger of such force as to leave nothing to the discretion of the officer." *C.L.*, 143 Wis. 2d at 723.

**B. *Voss v. Elkhorn Area School District*.**

¶28 Vincent contends that we should reach the same outcome as in *Voss*, 297 Wis. 2d 389, because *Voss* "is factually nearly identical to this case." In *Voss*, this court held that a school district was not immune from liability for injuries to a student because the circumstances of the injuries met the requirements of the known danger exception. *Id.*, ¶23. However, we agree with the School District

that there are material differences between the present case and ***Voss***.  We begin by setting forth the salient facts in ***Voss***.

¶29     Voss was injured at school during health class while participating in an exercise intended to show students the effect that alcohol has on the body and how it impairs a person's ability to operate a vehicle.  ***Id.***, ¶2.  As part of the exercise, students wore what were referred to as "fatal vision goggles," which replicated the effects of a .10 blood alcohol concentration, and performed a number of activities, including walking in straight line, shooting a ball at a garbage can, and standing on one leg.  ***Id.***, ¶¶2-3.  While performing those activities, some students lost their balance, slipped, or stumbled, which, according to the teacher, was the purpose of the exercise.  ***Id.***, ¶¶3, 19.  Students were also instructed to walk approximately twenty-five feet between rows of three-foot-long wood and metal desks and "go after a tennis ball thrown by the teacher."  ***Id.***, ¶4.  While performing this later activity, some students raced to the ball and collided with each other or slid on the floor, and a student who performed the exercise before Voss was injured bumped into a desk and her knees hit the floor.  ***Id.***, ¶¶5-6.  While walking between desks while wearing the goggles, Voss tripped when her foot became caught on a desk and her mouth hit the top of the desk, causing her significant injuries.  ***Id.***, ¶¶6-7.

¶30     A specific, collective set of circumstances in ***Voss*** led this court to conclude that the exercise created a hazardous situation for which injury was nearly certain and for which there was only a single, self-evident response for the teacher:  termination of the exercise.  ***Id.***, ¶¶1, 19.  The teacher was aware of the perils of the exercise, including the fact that students were certain to fall or be injured during the exercise, but took no precautions to minimize the risk of injury.  ***Id.***, ¶¶19-20.

¶31 Like the students in *Voss*, Vincent's vision and his ability to do everyday activities—such as navigating without verbal assistance—were impaired during the blindfold activity. However, based on the summary judgment materials, that is where the similarities between *Voss* and these circumstances end. Unlike *Voss*, the blindfold activity was not designed to distort the students' sense of balance, and students were not expected to lose their balance, slip, or stumble. Instead, here blindfolded students were expected to rely on their senses other than sight to compensate for their loss of sight so as to experience the environment around them. Unlike *Voss*, the blindfold activity did not cause students to wander by themselves unassisted. Each blindfolded student had a non-blindfolded partner who was instructed to guide the blindfolded partner and help prevent the blindfolded partner from coming to harm. Unlike *Voss*, the pertinent portion of the blindfold activity did not take place in a confined space amid wood and metal desks but, instead, took place in a fieldhouse. Additionally, unlike *Voss*, there is no evidence that students involved in the blindfold activity fell or collided with anyone or anything injury-producing prior to Vincent's accident.

¶32 Because of these significant differences between the material facts of this case and the facts of *Voss*, the holding of *Voss* does not control the outcome in this situation.

## C. Disputed Material Facts.

¶33 For the reasons that follow, we conclude that, considering the contents of the summary judgment materials and the known danger exception to the School District's claim of governmental immunity, material facts and inferences that may be drawn from the facts remain disputed. Accordingly, we agree with the circuit court that the School District's summary judgment motion

must be denied.  In addition, we also conclude that the circuit court erred in determining based on the summary judgment materials that the known danger exception applies to defeat the School District's claim of governmental immunity.

¶34    First, there is a genuine issue of material fact on a potentially important issue, namely, the noise level in the fieldhouse during the second part of the activity when Vincent was injured.  The level of noise in the fieldhouse during the activity is material to the three-step test for the known danger exception.  *See Heuser*, 321 Wis. 2d 729, ¶28 (describing the three steps of this test).  Specifically, the noise level bears on whether there exists a "compelling danger" under the first step.  Vincent argues that "[t]he noise in the fieldhouse was so great that the students were unable to understand anything anyone was saying," and a reasonable inference is that it would have been difficult or impossible for Vincent to hear his partner.  For those assertions, Vincent relies solely on a statement from another student in Lien's class that "[i]t was extremely loud in the field house." Vincent implicitly contends that the assertion of one student regarding his subjective perception of noise in one spot in the fieldhouse must have been the same for Vincent and Lien.  However, the School District disputes that the fieldhouse was loud at or before the time of Vincent's accident.  The School District points to testimony from Vincent that he could not recall if it was "so loud that [he] felt that [he] couldn't hear [his partner]."  There is also no evidence that Lien recalled the noise level at that time.  Thus, the School District argues that "compound inferences" from Vincent about the noise in the fieldhouse are unsupported by the evidence.

¶35    To accept Vincent's argument would require us to accept as the only reasonable inference that the perception of one student of noise in the fieldhouse was true everywhere in the fieldhouse, including for Lien and Vincent.  That is not

the only reasonable inference based on this record. As a result, there are disputed material facts and competing inferences regarding the noise level in the fieldhouse at or before Vincent's accident.

¶36 Second, there is a genuine issue of fact as to how Lien instructed the students at the outset of the second part of the activity. Specifically, the parties disagree as to whether Lien instructed the students to "run." Vincent asserts in briefing in this court that Lien instructed the students to "line up at one end of the fieldhouse and run the length of the fieldhouse." However, as noted earlier, the record shows that Vincent testified that he does not recall the exact words used by Lien in instructing the students but that he "effectively told us to run," and Lien testified that he told the students to "walk." Those statements create a material dispute of fact.

¶37 In sum, the noise level in the fieldhouse during the second part of the activities, along with the pertinent instructions given to Vincent by Lien, are genuine issues of material fact regarding the School District's claim of governmental immunity, and the circuit court properly denied the School District's summary judgment motion. For the same reasons, the circuit court erred when it held that the School District did not enjoy governmental immunity because the known danger exception applied.

¶38 We emphasize that our remand does not constrain the discretion of the circuit court to conduct further proceedings in the order and manner determined by the circuit court regarding governmental immunity, the known danger exception, and any remaining disputed issues not resolved by this opinion based on the summary judgment materials as they now stand.

**CONCLUSION**

¶39 For those reasons, we affirm the circuit court's denial of the School District's motion for summary judgment, reverse the circuit court's apparently intended ruling in favor of Vincent that there is no governmental immunity for the School District, and remand the matter for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.